**MAYFIELD DAIRY FARMS, INC., Appellant,**

v.

**Jerry McKENNEY, d/b/a Easy Way Market et al., Appellees.**

Supreme Court of Tennessee.

Feb. 2, 1981.

William A. Newcomb, Harriman, Ford P. Mitchell, Chattanooga, for appellant, Mayfield Dairy Farms, Inc.

Browder G. Williams, Harriman, for appellee, Bank of Roane County.

## OPINION

COOPER, Justice.

This action involves the application of Chapter 6 of the Uniform Commercial Code relating to bulk transfers.

C. Scott Shrout was the owner and operator of a grocery business operating under the trade name of Easy Way Market. On June 1, 1977, he sold the business to Jerry McKenney. The parties to the sale made no attempt to comply with the requirements set forth in T.C.A. § 47–6–101 et seq. for bulk transfers.

On July 14, 1977, the Bank of Roane County loaned McKenney $30,000.00 to be paid on the purchase price of the business. The check was made payable to Scott Shrout, McKenney, and F. G. and Ann Shrout, the parents of Scott. This was done to ensure payment of the money to the elder Shrouts, who had a perfected security interest in the equipment and fixtures of the Easy Way Market. The Shrouts then released their security interest, making the bank's security interest prior to any claim of the elder Shrouts. At the same time, McKenney executed a note to F. G. and Ann Shrout in the amount of $18,791.00, the balance still owing to the Shrouts after receipt of payment of the money McKenney borrowed from the bank. McKenney gave the Shrouts a security interest in the assets of Easy Way Market subordinate to that of the bank to secure payment of the note. The transactions involving the bank and the elder Shrouts took place on July 14–15, 1977.

Mayfield Dairies, Inc., a creditor of C. Scott Shrout, d/b/a Easy Way Market, filed the present action seeking to satisfy its claim out of the assets of the business. Mayfield also asked the chancellor to determine whether the security interests of the bank and of the Shrouts were subject to the defect in McKenney's title caused by the failure of the parties to the sale of the business to comply with the bulk transfers law.

The chancellor concluded the bank and the elder Shrouts were subsequent purchasers under T.C.A. § 47–6–110, but that they took their security interests free of any defect in title resulting from McKenney's noncompliance with the requirements of the bulk transfers law since they were good faith purchasers for value without notice of the noncompliance. The chancellor further held that the bank had first priority to the proceeds from the court sale of the assets of the Easy Way Market.[1]

The Court of Appeals affirmed, but did so on the ground that T.C.A. § 47–6–103(1) exempts from the provisions of the bulk

---

1. The claim of the bank, if prior, will exhaust the proceeds of the sale of assets of the Easy Way Market.

**156**

transfers law, such as those to the bank and the elder Shrouts, "made to give security for the performance of an obligation." The court also called attention to T.C.A. § 47–9–111 which provides that "the creation of a security interest is not a bulk transfer under chapter 6 of this title (See § 47–6–103)."

We agree with the Court of Appeals that T.C.A. § 47–6–103 exempts a transaction creating a security interest from the procedural details of the bulk transfers law. *See e. g. John Sexton & Co. v. Olde Field Products, Inc.*, 28 Mass.App.Dec. 112, 5 U.C.C.Rep. 870 (1964). *See also* "Comments to Official Text" of T.C.A. § 47–9–111, wherein it is noted:

[I]t seems to be true that the bulk transfer type of fraud has not often made its appearance in the security field: it may be that lenders of money are more inclined to investigate a potential borrower than are purchasers of retail stores to determine the true state of their vendor's affairs. Since compliance with the bulk transfer laws is onerous and expensive, legitimate financing transactions *should not be required to comply* when there is not reason to believe that other creditors will be prejudiced. This Section merely reiterates the provisions of Article [Chapter] 6 on Bulk Transfers which provides in Section 6–103(1) that transfers "made to give security for the performance of an obligation" are not subject to that Article [Chapter]. (Emphasis added)

But the fact that a transaction creating a security interest is exempt from the requirements of the bulk transfers law does not mean that the security interest is free of defects in title of the borrower that result from an earlier defective bulk transfer of the assets of a business. Where there is a defect in the title of the borrower due to an earlier defective bulk transfer, the quality of the security interest created by a subsequent transfer is determined by T.C.A. § 47–6–110. *Cf. In re Dee's*, 311 F.2d 619 (3d Cir. 1962). *See also* 3A Bender, Uniform Commercial Code Service § 15.-03(2) at 15–11 (Dusenberg & King 1980); Quinn, Uniform Commercial Code Commentary and Law Digest, § 6–103(a) at 6–8 (1978); White & Summers, Uniform Commercial Code (Hornbook Series) § 19–2 at 648.

T.C.A. § 47–6–110, entitled "Subsequent transfers," provides that:

When the title of a transferee to property is subject to a defect by reason of his noncompliance with the requirements of this chapter, then;

(1) a purchaser of any such property from such transferee who pays no value or who takes with notice of such noncompliance takes subject to such defect, but

(2) a purchaser for value in good faith and without such notice takes free of such defect.

No serious contention is made by appellant that the transfer to the bank of a security interest in the assets of the Easy Way Market was not for value and not in good faith. The question as to whether the bank had notice of noncompliance is a factual issue, which was pretermitted by the Court of Appeals. However, the chancellor did consider the issue and found that the bank did not have actual or constructive notice of noncompliance with the bulk transfers law in the earlier sale of the Easy Way Market. We cannot say from our review of the record that the evidence preponderates against the chancellor's finding on the issue of notice.

As the term is used in the Uniform Commercial Code, a person has notice of a fact when

(a) he has actual knowledge of it, or

(b) he has received a notice or notification of it; or

(c) from all the facts and circumstances known to him at the time in question he has reason to know that it exists. T.C.A. § 47–1–201(25).

McKenney testified he knew nothing about the bulk transfers law. Scott Shrout testified he never put the bank on notice even of the outstanding bills. The representative of the bank that handled the loan to McKenney testified he had no knowledge of the bulk transfers law at the time, but he

did make inquiry of Scott Shrout as to whether any debts were owed by the Easy Way Market other than the recorded security interest held by the elder Shrouts, and was told there were none. Needless to say, if the statement of Shrout had been true, the title of McKenney to the assets of Easy Way Market would have been without defect. Under these circumstances, and there being no public record available to the bank to check the accuracy of the statement of Scott Shrout, we see no basis to charge the bank with notice, either actual or constructive, of the noncompliance with the bulk transfers act in the earlier sale of the assets of the Easy Way Market.

The judgment is affirmed. The case is remanded to the trial court for enforcement of the judgment. Costs of the appeal are adjudged against Mayfield Dairy Farms, Inc., and its surety.

BROCK, C. J., and FONES, HARBISON and DROWOTA, JJ., concur.