IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2000 Session

## UNIFIRST CORPORATION v. HARRY LANE, ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 98-375-II      Claudia C. Bonnyman, Special Chancellor**

_____

**No. M2000-00357-COA-R3-CV - Filed January 4, 2001**

_____

This is an appeal from an award of damages by the Chancery Court of Davidson County for a breach of a contract. The defendants assert that the individual executing the contract did not have the authority to bind the corporation and that the contract ended when the corporation sold its assets. We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court**
**Affirmed and Remanded**

BEN H. CANTRELL, P.J., M.S., delivered the opinion of the court, in which WILLIAM C. KOCH, JR. and WILLIAM B. CAIN, JJ., joined.

Linda J. Hamilton Mowles, Knoxville, Tennessee, for the appellants, Harry Lane, and Harry Lane Dodge-Chrysler-Plymouth, Inc., Cappo Management, Inc., d/b/a East Tennessee Dodge-Chrysler-Plymouth, Inc., and Jeffrey E. Cappo.

Earl Porter, Jr. and Thomas F. Bloom, Nashville, Tennessee, for the appellee, Unifirst Corporation.

**OPINION**

**I.**

Unifirst, Inc. rents uniforms to businesses and other organizations. In the early 1990's, Unifirst, along with another supplier, furnished uniforms to Harry Lane Dodge-Chrysler-Plymouth, a corporation wholly-owned by Harry Lane in Crossville. When the three-year contract expired, the dealership did not renew it.

In 1996, a Unifirst representative contacted David Anderson, the general manager of the dealership, and showed him how the company could save money by canceling their existing contract and signing a contract with Unifirst. Mr. Anderson said he had to get Harry Lane's approval. A

week later, on January 15, 1997, Mr. Anderson signed the contract showing "Harry Lane Chrysler-Dodge-Plymouth" as the customer and himself as "General Manager." Later the parties executed a second contract covering some other uniform types and Mr. Anderson signed on behalf of "Harry Lane Sales Dept." and called himself "Gen. Mgr."

Unifirst began supplying uniforms under the contract. On June 5, 1997, Mr. Lane sold the dealership to Jeffrey Cappo, a dealer with several outlets in East Tennessee. Mr. Cappo assigned the contract to Cappo Management, Inc., d/b/a East Tennessee Dodge. The new owner cancelled the service agreement as of July 25, 1997.

Unifirst sued Harry Lane, the Harry Lane dealership, Cappo Management, Inc. d/b/a East Tennessee Dodge-Chrysler-Plymouth, Inc., and Jeffrey E. Cappo, individually, for the balance owed on the services actually provided and for the liquidated damages specified in the contract for premature cancellation. The Chancery Court of Davidson County entered a judgment against all the defendants except the Harry Lane dealership, which had been dissolved, for $17,442.58 plus attorney's fees of $8,310.00 and discretionary costs of $87.50.

## II.
### MR. ANDERSON'S AUTHORITY

The defendants/appellants filed a joint appeal. In their first issue they insist that Mr. Anderson, the general manager of the Harry Lane Dealership, did not have the authority to bind the corporation. They point out that Harry Lane had circulated a memorandum to all his managers in 1993 prohibiting them from entering into contracts without express written authority. He and Mr. Anderson testified that Mr. Anderson had not submitted the contract to him for approval, nor had Mr. Anderson gotten corporate approval in any other fashion.

If we accept these assertions as true, Mr. Anderson may not have had actual authority to bind the corporation to the agreement with Unifirst.[1] But he undoubtedly had the apparent authority to do so. "It is . . . the settled law of this State that a general agent is authorized to act within the apparent scope of his authority, though they may be different from his actual powers." *O'Shea v. First Federal Savings & Loan Association of Columbia*, 405 S.W.2d 180, 183 (Tenn. 1966). And apparent authority is "such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." *Rich Printing Co. v. McKellar's Estate*, 330 S.W.2d 361, 376 (Tenn. Ct. App. 1959).

We think a reasonably prudent man would expect the general manager of a business, even one he knew to be owned by a corporation, to have the authority to rent the uniforms that the business furnished to the employees.

---

[1]This conclusion cannot be taken as a given. As the chancellor held, a "general manager" may, in the eyes of the law, have actual authority to bind the principal in any transaction involving the principal's ordinary business. *See Rich Printing Co. v. McKellar's Estate*, 330 S.W.2d 361 (Tenn. Ct. App. 1959).

## III.
### Harry Lane's Individual Liability

Having found the contracts binding on the corporation, we are faced with Mr. Lane's contention that he is not personally liable for the corporate debts. But Mr. Lane owned all the stock in the Harry Lane dealership. After he sold the company to Mr. Cappo, he dissolved the corporation and retained the assets. The creditors of a dissolved corporation may enforce a claim against the corporate assets in the hands of the shareholders. Tenn. Code Ann. § 48-24-107(d)(2). *See also Schlater v. Haynie*, 833 S.W.2d 919 (Tenn. Ct. App. 1991). Therefore, we affirm the chancellor's conclusion that Mr. Lane is personally liable.

## IV.
### The Liability of Mr. Cappo and East Tennessee Dodge-Chrysler-Plymouth

The chancellor held Mr. Cappo and East Tennessee Dodge liable under Tenn. Code Ann. § 47-6-104, 105, the bulk transfer provisions of the Uniform Commercial Code (repealed in 1998). A "bulk transfer" is defined in Tenn. Code Ann. § 47-6-102(1) as "any transfer in bulk and not in the ordinary course of the transferor's business of a major part of the materials, supplies, merchandise or other inventory . . . of an enterprise subject to this chapter."

A bulk transfer is ineffective against a creditor of the transferor unless the transferor furnishes a list of the transferor's creditors, Tenn. Code Ann. § 47-6-104, and the transferee gives notice of the transfer to the creditors as prescribed in the statute, Tenn. Code Ann. § 47-6-105. The transferee has the duty to apply a necessary part of the consideration to the creditors listed by the transferor. Tenn. Code Ann. § 47-6-106. A purchaser from the transferee with notice of the non-compliance with the bulk transfer law takes the property subject to the claims of the creditors that existed prior to the first transfer. Tenn. Code Ann. § 47-6-110; *Mayfield Dairy Farms, Inc. v. McKenney*, 612 S.W.2d 154 (Tenn. 1981).

It is undisputed that the transfer to Mr. Cappo in June of 1997 did not comply with the bulk transfer provisions of the Code. In fact, the purchase agreement expressly waived compliance with the Code. And it could hardly be argued that in the subsequent transfer by Mr. Cappo to Cappo Management, Inc. d/b/a East Tennessee Dodge, the transferee did not have notice of the defects in the first transaction.

While we affirm the judgment against Mr. Cappo and Cappo Management, Inc., d/b/a East Tennessee Dodge, we do not take any position on where the ultimate liability may lie. The original transfer agreement made certain provisions with respect to the seller's debts, but those provisions are not in issue here.

# V.
## THE PAROL EVIDENCE ISSUE

The appellants also assert that Unifirst's representatives told Mr. Anderson that the contract could be cancelled at any time without consequences simply by giving notice of the cancellation. The chancellor held that these assertions violate the Parol Evidence Rule. We agree.

The proof of the inducing representations would vary the terms of the written contract, which provided for certain payments if the contract was cancelled before the five year term expired. The parol evidence rule makes such evidence inadmissible. *Harry H. Whelchel, Inc. v. Ripley Tractor Corporation, Inc.*, 900 S.W.2d 691 (Tenn. Ct. App. 1995).

The appellants also argue that similar representations were made at the time of the cancellation. Therefore, the parol evidence rule, which applies only to representations made prior to or contemporaneous with the original written agreement, does not exclude this testimony. *See Starnes v. First American National Bank of Jackson*, 723 S.W.2d 113 (Tenn. Ct. App. 1986). Accepting that assertion as a correct statement of the law, we have carefully considered the proof in the record on this point, and we do not find any reference to the cancellation being <u>without consequences</u>. The proof shows that the new manager of the dealership called a Unifirst representative about canceling the agreement and she told him "to mail her a letter." Being able to simply cancel the contract is one thing, but being able to escape the consequences of that cancellation is an entirely different matter.

# VI.
## THE DAMAGES

The chancellor's judgment included $2,220.53 in charges that had accrued at the time the new dealership cancelled the contract. Under any of the defendants' theories, that amount should be paid. Even if the contract was unenforceable for some reason, the dealership would be unjustly enriched if it accepted the benefit conferred and refused to pay for it. *Castelli v. Lien*, 910 S.W.2d 420 (Tenn. Ct. App. 1995).

The contracts contained the following provision:

> In the event of termination prior to expiration, Customer agrees to purchase garments issued to them . . . at replacement costs then in effect or to pay 50% of the applicable charges for the remainder of the term, whichever is greater.

The "applicable charges" were contained in another paragraph. That provision stated:

> The weekly service charge for any individual leaving the employment or position requiring uniforms can be terminated but only after all garments issued to that

-4-

individual, or the value of same, has been returned to the company. In any event the minimum weekly charge of _____ will be in effect unless there is a major layoff.

The blanks in the two contracts were filled in with the figures of "$77.00" and "$52.00" respectfully. The chancellor calculated the balance by taking the remaining 236 weeks on the contract and multiplying that figure by $129.00 (the sum of the minimum weekly charges in the two agreements) and dividing by two ("50% of the applicable charges, for the remainder of the term.")

The appellants contend that the ownership change cancelled the minimum charges because it amounted to a "major layoff." But the record does not support the conclusion that a major layoff occurred. The new owners took over the dealership on July 1, 1997. They continued to operate the business and to use the plaintiff's services until July 27 – with the same employees, so far as the record shows. It is true that the employees were no longer working for the Harry Lane Corporation, but we do not think the sale of the business is a major layoff as described in the contract. If the parties had so intended, it would have been just as easy to include a "sale of the business" as a terminating condition.

The plaintiff's witnesses testified that the minimum charge feature in the contract was included to make sure the company recouped substantial initial costs incurred in setting up the account and buying the uniforms. The weekly rates were calculated to cover the costs over the life of the contract and to provide a reasonable return to Unifirst. If the contract could be terminated at any time by a sale of the business, Unifirst would have incurred the initial costs without any way to recoup them.

These considerations also have a bearing on the appellants' contention that, as a liquidated damage provision, the minimum charges are unenforceable because they amount to a penalty. *See Guiliano v. Cleo*, 995 S.W.2d 88, 98 (Tenn. 1999). But in the absence of fraud or overreaching, knowledgeable parties may freely contract with respect to the consequences of a breach by either side. *Boker v. Holder*, 722 S.W.2d 676 (Tenn. Ct. App. 1986). If the provision is a reasonable estimate of the damages that would occur from a breach, then the provision is enforceable. *V. L. Nicholson Co. v. Transcon Investment Co.*, 595 S.W.2d 474 (Tenn. 1980). The burden of proving that a contract provision is a penalty rather than a liquidated damage provision is on the party seeking to avoid the provision. *"Farmers Export Co. v. M/V Georgis Prois*, 799 F.2d 159 (5th Cir. 1986). We hold that the appellants have failed to carry their burden in this case.

The judgment of the court below is affirmed, and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellants.

_____
BEN H. CANTRELL, PRESIDING JUDGE, M.S.