**Laura Diane Cook STACKS, Plaintiff/Appellee,**

v.

**Robert A. SAUNDERS, Executor of the Estate of Rosemary Reeser Saunders and Robert A. Saunders, Individually, Defendant/Appellant.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Dec. 26, 1990.

Application for Permission to Appeal Denied by Supreme Court March 18, 1991.

Henry M. Beaty, Jr., Beaty & Smith, Memphis, for plaintiff, appellee.

Hayden D. Lait, Gerald D. Waggoner, Byrd & Cobb, Memphis, for defendant, appellant.

FARMER, Judge.

This appeal stems from the trial court's order setting aside the last will and testament of decedent Rosemary Reeser Saunders, and ordering her estate to be administered under the laws of descent and distribution.

Rosemary Reeser Saunders was the wife of defendant/appellant, Robert A. Saunders. Mrs. Saunders died as a result of cancer in July of 1981. The Saunders had two children of their marriage and the decedent had two children by a former marriage, the plaintiff/appellee, Laura Diane Cook Stacks, and son Charles Cook.

Approximately November 1980, Charles Cook told the decedent, his mother, that a homosexual relationship existed between himself and his stepfather, Robert A. Saunders. Thereafter, the decedent contacted an attorney seeking to institute a divorce proceeding against her husband and seeking to remove him from her will. About a month later, prior to the decedent actually instituting the divorce proceeding or changing her will, she informed her attorney, William Ray Ingram, that she had decided to give her husband a second chance be-

cause he had promised to cease his homosexual activities with her son.

The decedent discovered she had cancer in June of 1981 and subsequently died in July of 1981. The decedent's will, which was executed in 1969, named the defendant as executor and sole beneficiary. In the event the defendant did not survive the decedent, the will provided that her estate was to go to or for the benefit of her children.

On October 21, 1982, a will contest was filed in the Probate Court of Shelby County and subsequently certified to circuit court. The contestant sought to have the decedent's will declared void because the will was obtained by undue influence and fraud on the part of Robert A. Saunders. Upon a motion for summary judgment this cause was dismissed with prejudice. On March 15, 1985, the present action was instituted in the Chancery Court of Shelby County, alleging that the defendant fraudulently misled the decedent thereby preventing her from revoking her will.

The trial court held:

[T]he purported last will and testament of Rosemary Reeser Saunders dated June 5, 1969 be and the same are [sic] hereby set aside and the order of the Circuit Court of Shelby County, Tennessee, in cause no. 03641–5 T.D., be and the same is hereby set aside because of the fraud and deceit of Robert A. Saunders, which was not disclosed to Rosemary Reeser Saunders during her lifetime so that she was prevented from either revoking said will and codicil or executing a new will, as she had discussed with her attorney and the Court, therefore, finds, orders and decrees that Rosemary Reeser Saunders died intestate so that her estate passes under the laws of descent and distribution of the State of Tennessee and the costs of this cause are adjudged against defendant, Robert A. Saunders, for which let execution issue.

*The issues on appeal as we perceive them are:*

I. Whether the present action is barred by the doctrines of *res judicata* or collateral estoppel.

II. Whether the plaintiff failed to carry her burden of proof in establishing her claim of fraud.

Our standard of review in this case is *de novo*. Any factual determinations by the trial court are accompanied by the customary presumption of correctness unless we find the proof preponderates toward the contrary. T.R.A.P. 13(d). With the foregoing in mind we shall now review the issues as set out hereinabove.

### I.

The defendant contends that the present litigation is barred by the doctrine of *res judicata* because the parties herein were both included in a will contest dated October 21, 1982. *Res judicata* operates as a bar to a second suit between the same parties and their privies as to the same cause of action and as to all issues which were or could have been brought in the former suit. *Whitley v. Reeves,* 39 Tenn. App. 169, 281 S.W.2d 411 (1955); *Lillard v. Yellow Mfg. Acceptance Corp.,* 195 Tenn. 686, 263 S.W.2d 520 (1954); 22 Tennessee Jurisprudence, *Res Judicata* § 4 (1985). As we have noted, the former will contest was dismissed with prejudice. A dismissal operates as an adjudication on the merits and serves as a bar to a suit for relief *on the same subject matter. See,* T.R.C.P. 41.02(3).

The petition in the will contest stated in pertinent part that "the said will is invalid, null and void because same was *obtained* by the undue influence and fraud...." (Emphasis added) We are aware that a will contest is a proceeding in *rem* and conclusive upon all the world, *Petty v. Call,* 599 S.W.2d 791, 793 (Tenn. 1980), however, a will contest is only intended to test the external validity of a will. *Rogers v. Russell,* 733 S.W.2d 79 (Tenn.Ct.App.1986). The purpose of a will contest is to show that the testator was mentally incapable of entering into a will or that the will is not really the testator's last will and testament because it was procured by undue influence or fraud, such that the will should be declared void and the decedent's estate should be administered under

the laws of descent and distribution. *Clark v. Hefley,* 34 Tenn.App. 389, 238 S.W.2d 513 (1950). *See, Carver v. Anthony,* 35 Tenn.App. 306, 245 S.W.2d 422 (1951).

■ Will contests are statutory proceedings (T.C.A. § 32–4–101), *Petty v. Call,* 599 S.W.2d 791 (Tenn.1980), and "should not be obscured by issues that are not within the court's jurisdiction to decide." *Rogers,* 733 S.W.2d at 85. The court's jurisdiction is limited to determining the validity of the decedent's will or whether the instrument offered for probate is actually the last will and testament of the decedent. *Id.* at 84. The trial court in such a proceeding does not, however, have the jurisdiction to entertain extraneous issues. The Tennessee Supreme Court stated as far back as 1926 that courts should not adopt procedures which lengthen the probate of a will. *Id.* at 85, *citing Lillard v. Tolliver,* 154 Tenn. 304, 315, 285 S.W. 576, 579 (1926).

■ The plaintiffs in the present action are *admittedly* not contesting the validity of the decedent's will. There are two potential causes of action raised by the plaintiff in the present litigation: (1) An action against the defendant, stepfather, for fraudulent misrepresentations. The plaintiff alleges that the defendant made fraudulent misrepresentations to the plaintiff's mother which prevented her from revoking her will and divorcing the defendant; and (2) An action to set aside the probate of the decedent's will on the basis of extrinsic fraud.

Neither of these claims are barred by the doctrine of *res judicata.* A judgment which is obtained through extrinsic fraud does not have a *res judicata* effect, *Nobes v. Earhart,* 769 S.W.2d 868 (Tenn.Ct.App. 1988), and a tort action or actionable fraud could not have been litigated or injected as an issue in the former will contest because it would be a collateral or extraneous matter. Therefore, since the present claims are not actions which were or could have been litigated in the former suit, then they can not be barred by the doctrine of *res judicata.*

■ The defendant also contends that the present action is barred by the application of collateral estoppel. The Tennessee Supreme Court in *King v. Brooks,* stated that "[u]nder the doctrine of collateral estoppel, when an issue has been actually and necessarily determined in a former action between the parties, that determination is conclusive upon them in subsequent litigation." 562 S.W.2d 422, 424 (Tenn.1978), *citing Shelley v. Gipson,* 218 Tenn. 1, 400 S.W.2d 709 (1966); *A.L. Kornman Co. v. Metropolitan Government of Nashville and Davidson County,* 216 Tenn. 205, 391 S.W.2d 633 (1965). In order to bar the relitigation of certain facts determined in the former action by applying the doctrine of collateral estoppel, there must be an identity of the parties or their privies and identity of the issue. *Blue Diamond Coal v. Holland–America Ins. Co.,* 671 S.W.2d 829, 832 (Tenn.1984).

The former will contest only determined that the decedent's will was not *obtained* by the undue influence or fraud of the defendant. The will contest did not, however, determine whether the defendant's fraudulent and deceitful misrepresentations prevented plaintiff's mother from revoking her will. Since the present issues have not been decided or presented in any prior litigation then it is apparent the doctrine of collateral estoppel will not act as a bar to any issue set forth in this litigation.

## II.

■ As we have noted, the decedent's will was subject to a will contest or tried on an issue *devisavit vel non.* This circuit court will contest amounted to the probate of the decedent's will in solemn form. *Bearman v. Camatsos,* 215 Tenn. 231, 385 S.W.2d 91 (1964). *See,* Phillips and Robinson, Pritchard on Wills and Estates, 4th ed. § 382 (1983).

When a will has been probated in solemn form no question as to its validity can thereafter be raised except to set aside the judgment due to fraud in its procurement. *Jennings v. Bridgeford,* 218 Tenn. 287, 403 S.W.2d 289 (1966); *Roland v. Weakley,* 208 Tenn. 444, 346 S.W.2d 578 (1961); *See,* Phil-

**592**

lips and Robinson, Pritchard on Wills and Estates, 4th ed., § 312 (1983). This fraud in the procurement must be fraud extrinsic to or collateral to the issues determined in the alleged fraudulent judgment. *Jennings*, 403 S.W.2d at 291.

For the purpose of distinction, there are two types of fraud—extrinsic and intrinsic fraud. The intrinsic-extrinsic fraud distinction is not easily definable but "the term 'intrinsic' usually means that fraud was practiced in procuring the transaction, as distinguished from extrinsic fraud, which ordinarily means that fraud was practiced in the act of obtaining a judgment in the course of the litigation involving a transaction." 37 Am.Jur.2d *Fraud and Deceit* § 5 (1968).

Extrinsic fraud is a deception which prevented the defrauded party from obtaining a fair hearing in the former litigation. This deception must be as to matters not at issue in that controversy. Examples of extrinsic fraud are: "Keeping the unsuccessful party away from court by a false promise of a compromise, or purposely keeping him in ignorance of the suit, or where an attorney fraudulently pretends to represent a party and connives at his defeat, or, being regularly employed, corruptly sells out his client's interest." *Nobes v. Earhart*, 769 S.W.2d at 874, *citing Noll v. Chattanooga Co.*, 38 S.W. 287, 290–91 (Tenn.Ct.App.1896).

In the case at bar, the fraud, if any, clearly cannot be classified as extrinsic fraud. The defendant in this case did not prevent a fair submission of the will contest by commission of this fraud. If the alleged fraud had been revealed to the court in the previous action, and perhaps it was, the outcome of that action would still have been the same. The only determination in that proceeding was the validity of the decedent's "1969" will, and the will was and still is admittedly valid in that she was mentally competent when she executed it and *no one influenced her by fraud or otherwise to execute it.*

The plaintiff in this case also raised a claim against the defendant based on the tort of fraud. The basic elements for a fraud action are: (1) an intentional misrepresentation with regard to a material fact, *Keith v. Murfreesboro Livestock Market, Inc.*, 780 S.W.2d 751 (Tenn.Ct.App. 1989); (2) knowledge of the representation falsity—that the representation was made "knowingly" or "without belief in its truth," or "recklessly" without regard to its truth or falsity, *Tartera v. Palumbo*, 224 Tenn. 262, 266–67, 453 S.W.2d 780, 782 (1970); (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage, *Holt v. American Progressive Life Ins. Co.*, 731 S.W.2d 923, 927 (Tenn.Ct. App.1987); *Haynes v. Cumberland Builders, Inc.*, 546 S.W.2d 228, 232 (Tenn.Ct. App.1976); and (4) that the misrepresentation relates to an existing or past fact, *Haynes*, 546 S.W.2d at 232, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise," *Keith*, 780 S.W.2d at 754, *citing Brungard v. Caprice Wreckers, Inc.*, 608 S.W.2d 585, 590 (Tenn. Ct.App.1980).

The fraud in this case is based upon the defendant's representation that he would cease his homosexual relationship with the decedent's son if she would not obtain a divorce. The decedent in reliance upon this promise did not institute a divorce proceeding and consequently did not remove the defendant from her will. This representation by its own terms does not relate to an existing or past fact, but instead relates to the defendant's future conduct or action. Therein lies the plaintiff's cause of action for promissory fraud.

The doctrine of promissory fraud has not been adopted in Tennessee, but the Supreme Court made it clear that they were willing to adopt the majority rule pertaining to promissory fraud "in a proper case where justice demands." *Bolan v. Caballero*, 220 Tenn. 318, 417 S.W.2d 538, 541 (1967). In addition, the Supreme Court in *Fowler v. Happy Goodman Family*, 575 S.W.2d 496 (Tenn.1978), judged the facts of that case according to the majority rule which is the acknowledgment of promisso-

ry fraud. However, the court held that the complainant failed to produce sufficient proof to support its claim for promissory fraud. *Id.*

As we have noted, promissory fraud can be established by proving a lack of a present intent with regard to a promise of future action. *Brungard v. Caprice Records, Inc.,* 608 S.W.2d 585 (Tenn.Ct. App.1980). In order for the plaintiff to demonstrate the lack of present intent or that the statement was false when made, the plaintiff must do so "by evidence other than subsequent failure to keep the promise or subjective surmise or impression of the promisee." *Farmers & Merchants Bank v. Petty,* 664 S.W.2d 77, 81 (Tenn.Ct. App.1983).

The only proof that the plaintiff offered at trial was the testimony of witnesses who testified that the defendant failed to fulfill his promise to the decedent by continuing to pursue the decedent's son. The defendant contends that the foregoing allegations are not true; he contends he did not pursue Charles Cook until after the decedent's death.

Nevertheless, it is unnecessary for us to resolve this controversy because, even if all the plaintiff's allegations were true, it still would not support a claim for promissory fraud. The defendant's subsequent failure to keep his promise is in and of itself insufficient to establish this fraud claim.

In light of the foregoing, the plaintiffs' claim for fraud cannot be upheld. The trial court is thereby reversed and the plaintiffs' complaint dismissed. Costs of this appeal are taxed to the appellee for which execution may issue if necessary.

CRAWFORD and HIGHERS, JJ., concur.