**HARRY J. WHELCHEL COMPANY, INC., Plaintiff–Appellant,**

v.

**RIPLEY TRACTOR COMPANY, INC., Defendant–Appellee.**

Court of Appeals of Tennessee, Western Section, at Jackson.

Jan. 31, 1995.

Application for Permission to Appeal Denied by Supreme Court May 1, 1995.

John J. Heflin, III of Rickey, Bourland, Heflin & Alverez, Memphis, for appellant.

J. Thomas Caldwell, Ripley, for appellee.

CRAWFORD, Judge.

This is a suit for breach of contract. Plaintiff/Appellant, Harry J. Whelchel Company, Inc. [hereinafter HWC] is a farm equipment wholesaler. Defendant/Appellee, Ripley Tractor Company, Inc. [hereinafter RTC], is a retail dealer of farm equipment. This litigation arises out of defendant's purchase of a piece of farm equipment known as a "rolling basket crumbler" from plaintiff.

Plaintiff's complaint alleges that defendant agreed in a written purchase order, to buy the "crumbler" pursuant to the payment terms specified therein, that the "crumbler" was delivered and that defendant has failed to pay as required by the purchase order. Defendant's answer admits signing the purchase order, denies that this constituted the agreement between the parties, and denies owing plaintiff. Defendant also asserts that plaintiff breached certain implied warranties under the commercial code. Defendant counterclaims and alleges an oral agreement that defendant would only have to pay for the equipment in the event that it was able to resell it. The counterclaim seeks reformation of the contract to reflect the alleged agreement between the parties. Following a bench trial, the court admitted the evidence of the prior agreement and reformed the contract. This appeal ensued.

Plaintiff's first issue on appeal is: Whether the trial court erred in admitting parol evidence to contradict the terms of the signed written agreement between the parties?

The contemporaneous oral agreement testified to by Mr. Reeves, the President of RTC, was as follows:

> [I] made the statement to him (Whelchel's representative) that if I sign this order will you see that I don't get hung with this thing and will you move it to some other dealer or something. And I believe he said we'll do something with it.

As a general rule, parol evidence is inadmissible to contradict, vary, or alter a written contract when the written instrument

is valid, complete, and unambiguous, absent fraud or mistake or any claim or allegations thereof. *Airline Const., Inc. v. Barr,* 807 S.W.2d 247, 259 (Tenn.App.1990); *see generally Littlejohn v. Fowler,* 45 Tenn. (Coldwell) 284 (1868); *Marron v. Scarbrough,* 44 Tenn. App. 414, 314 S.W.2d 165 (1958). In cases involving the sale of goods, this well established common law rule is statutorily embodied in T.C.A. § 47–2–202 (1992) which provides:

**Final written expression—Parol or extrinsic evidence.—**

Terms with respect to which the confirmatory memoranda of the parties agree or which are otherwise set forth in a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented:

(a) by course of dealing or usage of trade (§ 47–1–205) or by course of performance (§ 47–2–208); and

(b) by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

The contract at issue in this case clearly stated the payment terms as, "5% June 10, 1991, Net July 10, 1991 or as sold prior." The subsequent signed amendment agreed to by the parties stated the payment terms as, "5% May 10, 1992 Net June 10, 1992 or as sold prior."

 Although RTC signed the written purchase order, it claims that the parol evidence rule does not exclude the oral agreement because such an agreement was an "inducement" or an "independent collateral agreement" to the purchase order. Parol proof of 'inducing representations' or 'collateral agreements' to the written contract must be limited to subject matter which does not *contradict* or *vary terms* which are plainly expressed in the writing. *Airline Const. Inc. v. Barr,* 807 S.W.2d 247, 259 (Tenn.App. 1990).

RTC's interpretation of the statement by HWC's representative is that if the equipment did not sell, RTC would have no obligation to pay as stipulated in the purchase order. For the purpose of dealing with this issue, we will accept this interpretation.

This Court has previously been faced with similar situations. In *Farmers & Merchants Bank v. Petty,* 664 S.W.2d 77 (Tenn.App. 1983), the co-obligor on a note was allowed to testify that he was induced to sign the note by the statement of the president of the lending bank that he would never have to pay the note. This Court reversed the judgment on a jury verdict for the co-obligor. The Court said:

Another reason why the doctrine of promissory fraud should not be applied to the present facts is that the alleged fraudulent statement expressly negated the obligation of a written instrument. In *Fowler v. Happy Goodman Family* [575 S.W.2d 496 (Tenn.1978)], the alleged fraudulent statement did not contradict a written contract but related to other collateral matters between the parties. In the present case, the theory of defendant-appellee is, "I signed a written obligation to pay $35,-000.00, but he told me I was not to be obligated." This would be a clear instance of parol evidence offered to contradict the sole obligation of a written contact.

\* \* \* \* \* \*

Granting the necessity and justice of allowing defenses based upon misrepresentations which do not contradict or change the plain terms of a written instrument, the allowance of defenses based on oral statements clearly inconsistent with the written instrument sued upon would appear to be a radical departure from long established and accepted rules of law and would defeat the very purpose of committing agreements to writing.

Without doubting the veracity of the testimony of defendant-appellee, it must be recognized that one of the reasons for the parol evidence rule is to prevent fraud in presenting oral defenses to written instruments. That is, the parol evidence rule assumes that the parties deliberately chose

to put their agreements in writing to avoid the uncertainties of oral evidence, including the possibility of false testimony as to oral conversations. Thus, the parol evidence rule is a "quasi-statute of frauds" which rejects evidence of any oral statement in contradiction of the terms of a written agreement.

*Id.* at 81–82; RTC's interpretation of the alleged oral agreement directly contradicts the obligation created by the purchase order, and the trial court erred in allowing such evidence to be introduced.

RTC also asserted in the trial court that it is not obligated to pay the purchase order because of HWC's breach of implied warranties. The trial court made no finding concerning this defense. RTC argues on appeal that if we should decide that the trial court erred in reforming the purchase order, it should nevertheless be absolved from liability under its breach of warranty defense.

When HWC originally sold the "crumbler" to defendant, Mr. Herndon, HWC's sales representative, assured Mr. Reeves, the principal of RTC, that it would attach to the cultivator that Mr. Reeves had in stock. However, this was not the case. The U-bolts delivered with the "crumbler" were too short. Mr. Reeves notified HWC of its error and the proper U-bolts were shipped to RTC. Following a minor equipment modification, the "crumbler" was attached to the cultivator and operated properly.

However, this process had taken a number of months, and RTC felt that it had been unfairly deprived of its best opportunity to sell the product (during the planting season). HWC thought likewise, and the parties agreed to extend the payment term by 11 months. Under the new terms, RTC would receive a 5% discount if the account was paid by May 10, 1992, and that in any event the full price would be due June 10, 1992 or as sold prior. This agreement was signed by Mr. Reeves, as RTC's representative, and no other payment terms were altered.

Under the Uniform Commercial Code, a buyer who receives nonconforming goods, can reject the goods. T.C.A. § 47–2–601 (1992). However, in order to effectively reject the goods, the buyer must seasonably notify the seller. T.C.A. § 47–2–602 (1992).

"Acceptance" occurs, inter alia, when the buyer, after having a reasonable opportunity to inspect the goods, signifies to the seller that the goods will be retained in spite of their nonconformity, or when the buyer fails to make an effective rejection. T.C.A. § 47–2–606 (1992). Once "acceptance" with knowledge of nonconformity has occurred, the buyer cannot revoke acceptance unless it was on the assumption that the nonconformity would be seasonably cured, and the nonconformity was not subsequently cured. T.C.A. § 47–2–607(2) (1992). In any event, the buyer must notify the seller of the breach within a reasonable time of discovering the breach or be barred from any remedy. T.C.A. § 47–2–607(3).

In the present case, the record indicates that plaintiff chose to accept the equipment in spite of its nonconformity. RTC immediately recognized the fact that the "crumbler" would not attach to the cultivator as it was supposed to. However, RTC did not notify HWC that it intended to reject the equipment. Instead, the parties mutually agreed that HWC would fix the problem, and would extend the payment term to make up for any hardship that the error had caused RTC. RTC's execution of the new purchase order clearly indicates that the nonconformity was seasonably cured. The record establishes that the equipment had been accepted, any nonconformity had been cured, and defendant never contended there was a breach of warranty until it filed an amendment to its answer.

The terms of the written contract between the parties governs this transaction and it is uncontroverted that RTC has defaulted in payment. Accordingly, the judgment of the trial court is vacated and plaintiff is awarded judgment against defendant for $3,134.47 plus costs as of the date of the trial court's judgment. Costs of the appeal are assessed against defendant and the case is remanded to the trial court for such other proceedings as may be necessary.

HIGHERS and FARMER, JJ., concur.