IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
August 21, 2003 Session

## ROY MICHAEL MALONE, SR., v. SCOTT L. PROBASCO, JR.,

**Appeal from the County Circuit Court for Hamilton County**
**No.02-C-824     W. Frank Brown, III, Judge**

### FILED JANUARY 8, 2004

### No. E2002-03135-COA-R3-CV

In this appeal from the Circuit Court for Hamilton County the Plaintiff/Appellant, Roy Michael Malone, Sr., argues that the Trial Court erred in granting the Defendant/Appellee, Scott L. Probasco, Jr., a summary judgment.  We affirm and remand.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; Cause Remanded**

HOUSTON M. GODDARD, P.J., delivered the opinion of the court, in which HERSCHEL P. FRANKS and CHARLES D. SUSANO, JR., JJ., joined.

Michael E. Richardson, Chattanooga, Tennessee, for the Appellant, Roy Michael Malone

Charles J. Gearhiser, Chattanooga, Tennessee, for the Appellee, Scott L. Probasco, Jr.

### OPINION

At some time in the 1980's Mr. Malone began purchasing tracts of real property in an area of Chattanooga bordered by Martin Luther King Boulevard near the campus of the University of Tennessee at Chattanooga (hereinafter "UTC'). Assertedly, Mr. Malone anticipated that UTC would eventually seek to expand its campus into this area (hereinafter "the target area") and that there would be a resulting increase in the value of property located there.  In 1988 Mr. Malone approached American National Bank and Trust Company  with the intent of securing a loan of funds which would enable him to continue acquiring property in the target area at which time he was introduced to Mr. Probasco who was then chairman of the bank's board of directors.  Apparently the property Mr. Malone was seeking to acquire constituted a slum area of Chattanooga that had experienced a high crime rate and Mr. Probasco indicates in testimony that he was strongly in favor of its redevelopment.  Consequently, Mr. Probasco began personally lending Mr. Malone money which allowed Mr. Malone to continue purchasing property there.

In 1989 Tommy Haymes, an accountant who had in the past been employed by Mr. Malone, drafted a proposed partnership agreement relative to the business relationship of the parties. Mr. Haymes testifies that this agreement was drafted at the request of Mr. Probasco and that it was his understanding, based upon discussions he had with Mr. Probasco, that under this agreement Mr. Malone and Mr. Probasco "would have an equal ownership in the company." The agreement was, however, never executed.

In May of 1990 Mr. Probasco and Mr. Malone signed an agreement denominated "Management Agreement" which designates Mr. Malone as "Manager" and Mr. Probasco's attorney, Thomas Caldwell, as "Trustee" for "a Principal known to Manager ('Trustee')." It is not disputed that Mr. Probasco is the "Principal" referred to in the Management Agreement. The Agreement recognizes that Mr. Probasco has invested substantial sums of money in, and assumed substantial mortgage loans with regard to, properties in the target area and that these properties, along with other properties to be transferred to Mr. Malone, are held in trust by Mr. Malone for the benefit of Mr. Probasco. The Agreement further sets forth the duties of Mr. Malone regarding such matters as collection of rents, repair maintenance, payment of taxes and maintenance of insurance. The Agreement additionally provides that , "[a]s full compensation for his services as Manager and his services in assembling the Properties, Manager will receive a sum equal to Fifty Percent (50%) of the amount of proceeds realized from the ultimate sale or other disposition of the Properties in excess of the total Investment made by Trustee's Principal, or on his behalf, in the Properties." The Agreement also states that Mr. Malone, as Manager, acknowledges that he has no ownership interest in the subject properties and that he "is merely an agent with respect to the Properties and that no joint venture, *partnership*, or other similar arrangement exists between Manager and Trustee or Trustee's Principal." (Emphasis added.) Finally, the agreement acknowledges that Manager is an independent contractor.

On December 31, 1991, Mr. Probasco conveyed by quitclaim deed the properties at issue to the University of Chattanooga Foundation (hereinafter "UCF.")for the future use of UTC. Mr. Probasco confirms that Mr. Malone "didn't much want" him to give the property away and in his brief Mr. Malone states that he had wanted to continue to acquire properties in the target area and hold them as he felt that they would greatly appreciate in value in the future. Mr. Malone attests that one of the quitclaim deeds which apparently bears his signature was, in fact, not signed by him and that another of these deeds, if signed by him, was not signed in December of 1991, but in April of 1992. Mr. Malone asserts that he actually learned of the transfer of the properties to UCF from a newspaper article dated December 31, 1991.

On April 22, 1992, Mr. Malone and Mr. Probasco executed a document titled "Letter of Agreement" which purports to confirm an oral agreement which the two reached on December 23, 1991, at a conference in Mr. Probasco's office. This Letter of Agreement recites that Mr. Malone and Mr. Probasco agreed that the Management Agreement is replaced by the understandings reached by the parties in the December meeting including the following: 1) that all property in the target area managed by Mr. Malone as trustee for Mr. Probasco's benefit would be contributed by Mr. Probasco to UCF on or before December 31, 1991; 2) "that the entire management fees to which Malone

would be entitled were to be computed in the manner outlined in Paragraph 4 of this Agreement instead of the manner set forth in the Management Agreement." Paragraph 4 of the Letter of Agreement provides that, in full payment of management fees to which Mr. Malone was entitled under the May 1990 Management Agreement, Mr. Probasco would transfer to Mr. Malone the beneficial interest in, and income and any sales proceeds from, the management, sale or disposition of, certain remaining properties in excess of outstanding loans against them. In addition, Paragraph 4 provides that Mr. Malone will pay the outstanding loans on these properties and, in return for services required of him in that regard, and to further compensate him for fees due him under the Management Agreement, Mr. Probasco will himself make the monthly loan payments due on the properties for a limited specified period of time in an amount totaling $41,365.80; 3) that Mr. Probasco "would make certain loans to Malone to assist him in carrying the remaining debt on the property and to assist him in making certain purchases of property on Houston Street" and 4) that "[t]his agreement replaces all prior understandings of the parties whether oral or in writing."

On April 25, 2002, Mr. Malone filed a complaint in the Circuit Court for Hamilton County in which he alleges, *inter alia*, the following: 1) that Mr. Malone and Mr. Probasco became partners after their meeting in 1988 [1]; 2) that Mr. Probasco contributed the properties in the target area to UCF without the consent of Mr. Malone and over his objection; 3) that Mr. Probasco received a direct benefit from giving the properties to UCF because he was able to take a resulting federal income tax deduction and that Mr. Probasco received an indirect benefit as a stockholder of Suntrust Bank because, as a customer of Suntrust, UCF is charged fees based upon the value of its assets; 4) that the December 30, 1991, quitclaim deeds by which Mr. Probasco transferred the properties to UCF and which purport to bear the signature of Mr. Malone and his ex-wife were, in fact, not signed by Mr. Malone or his ex-wife and were ineffective to convey title; 5) that when Mr. Malone and Mr. Probasco met in December of 1991 Mr. Probasco proposed that, if Mr. Malone would allow him to convey the properties to UCF, he would relinquish ownership in other properties the partnership had acquired, loan Mr. Malone monies in the future and, if the properties conveyed to UCF "became worth what Malone was telling Probasco they would become worth, that Probasco would 'take care of Malone, and see to it that Malone was compensated for one-half of the increase in value'"; 6) that "throughout this relevant time frame" Mr. Probasco owed Mr. Malone certain fiduciary duties as a result of their partnership and because of "the special and unique relationship of the parties"; 7) that Mr. Probasco breached his fiduciary duty as Mr. Malone's partner by failing to disclose to Mr. Malone that he was serving as a Trustee for UCF and by failing to disclose his relationship with Suntrust Bank; 8) that Mr. Probasco assured Mr. Malone that he "would always be treated as a 50/50 partner" and that Mr. Malone "relied upon the partnership representations of Probasco" when he signed the Letter of Agreement which altered the parties legal relationship, that, accordingly, Mr. Probasco assurances that the parties' partnership relationship would continue constitutes fraud in the inducement and because of these misrepresentations the Letter of Agreement should be set aside; 9) that, both before and after the transfer of the subject properties to UCF, the value of the properties has substantially appreciated and "[o]ne half of such appreciation in value should be awarded

_____

[1] Although the complaint also alleges that Mr. Malone and Mr. Probasco signed a partnership agreement there is no evidence of such agreement and apparently Mr. Malone does not assert that allegation in this appeal .

Malone as an equal partner in the Malone/Probasco Partnership, or in the alternative should be awarded Malone based upon the representations of Probasco that Malone would always be entitled to a fifty (50%) percent share of the profits."; and 10) that in giving the subject properties to the Foundation, Mr. Probasco breached the parties' partnership agreement and, therefore, Mr. Malone is entitled to one-half of the appreciated value of the properties.

On August 19, 2002, Mr. Probasco filed a motion for summary judgment and after a hearing before the Trial Court on October 30, 2002, the Court granted the motion for summary judgment and dismissed Mr. Malone's complaint based upon the following grounds as set forth in its order of November 6, 2002:

1. Relative to the allegation of forged deeds, in connection with the recision and/or cancellation of documents, to be entitled to equitable relief, one must be diligent in pursuing a remedy. The record shows that the plaintiff was aware, as a result of a newspaper article dated December 31, 1991, that properties which were the subject of the deeds in question were transferred to the American National Bank on behalf of the [University of Chattanooga] Foundation.

2. The parties' agreements relative to the targeted property dated May __, 1990 and April 22, 1992, clearly indicate that the plaintiff was a manager acting for a principal rather than a partner, as alleged by the plaintiff. The April 22, 1992 Letter of Agreement is obviously an effort to resolve any outstanding agreements and issues between the parties, and specifically states that it replaces all other agreements, oral or written as to the targeted property. The record is obvious that plaintiff was having financial difficulties with the defendant assuming debt as shown by the May 1990, April 22, 1992, and also documents at Tab 11 filed in support of the motion, and the defendant acting as Trustee for the defendant.

3. The Court is of the opinion that the three year statute of limitations for fraud at T.C.A.§ 28-3-105 and/or the six year statute of limitations at T.C.A. 28-3-109 (for breach of contract/partnership) are applicable. The record shows that the plaintiff either knew or should have known that he was not going to receive the profits that he claims defendant promised him, because the property itself was in the hands of a third party as of December 31, 1991, and the record shows the plaintiff was aware of that fact on or about that date.

4. For much the same reasons as stated in the proceeding paragraph, the doctrine of laches applies as well. The record shows that the defendant is prejudiced by his fading memory, and the rights of third parties, the University of Tennessee at Chattanooga and the University of Chattanooga Foundation, have intervened in the ten years since the April 22, 1992 Letter of Agreement.

5. The Court is of the opinion that the Statute of Frauds may also apply, insofar as defendant's alleged promise relates to an interest in real estate (the targeted area) and the alleged promise was possibly one that could not be performed in one year.

6. The Court notes that there is no written partnership agreement. Therefore, the claims of partnership based upon the alleged oral agreements of the parties directly contradict the May __, 1990 Management Agreement (and other documents executed on that date), and are therefore barred by the application of the parol evidence rule. Likewise, the alleged promise made by defendant to induce plaintiff's signature on the April 22, 1992 Letter of Agreement to the effect that plaintiff's claims relative to the targeted area survived that agreement both directly contradict that agreement and are also barred by the application of the parol evidence rule.

In the instant appeal Mr. Malone contends that the Trial Court erred in granting Mr. Probasco's motion for summary judgment and presents four issues for our review which we restate as follows:

1) Did the Trial Court err in failing to address Mr. Malone's allegation that a fiduciary relationship existed between himself and Mr. Probasco?

2) Did the Trial Court improperly apply the parol evidence rule to exclude evidence offered by Mr. Malone as regards the Management Agreement of May, 1990 and the Letter of Agreement of April, 1992?

3) Did the Trial Court err in concluding that Mr. Malone and Mr. Probasco were not partners?

4) Did the Trial Court err in concluding that Mr. Malone's causes of action were time barred under the statutes of limitation set forth at T.C.A 28-3-105 and T.C.A. 28-3-109 and under the doctrine of laches?

The standard governing our review of a trial court's decision to grant a motion for summary judgment is well settled. Because the trial court's judgment involves purely a question of law, it is not entitled to a presumption of correctness. *Carvell v. Bottoms,* 900 S.W.2d 23 (Tenn. 1995). Our sole task in reviewing such a judgment is to determine whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been met. *Mason v. Seaton,* 942 S.W.2d 470 (Tenn. 1997).

As stated by the Supreme Court of this State in *Byrd v. Hall*, 847 S.W.2d 208 (Tenn. 1993) at page 214:

Rule 56 comes into play only when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Thus, the issues that lie at the heart of evaluating a summary judgment motion are: (1) whether a *factual* dispute exists; (2) whether the disputed fact is *material* to the outcome of the case; and (3) whether the disputed fact creates a *genuine* issue for trial. (emphasis in original)

The first issue we address is whether the Trial Court erred in failing to address Mr. Malone's allegations that a fiduciary relationship existed between himself and Mr. Probasco. Mr. Malone contends that the sole reason he signed the Management Agreement and Letter of Agreement was that Mr. Probasco told him to do so and that Mr. Probasco always told him that he would look after his (Mr. Malone's) interest and that the two would be partners notwithstanding what was stated in the written agreements. Mr. Malone asserts that the alleged fiduciary duty he was owed by Mr. Probasco "imposed upon Probasco the obligation of the utmost good faith and integrity in his dealings with Malone, in respect to their business transactions." Apparently Mr. Malone's argument is that Mr. Probasco breached this alleged fiduciary duty by making false assurances regarding the nature of their business relationship and the manner in which Mr. Malone would be compensated for his services. We also note that Mr. Malone's complaint asserts that Mr. Probasco breached a fiduciary duty by failing to disclose his position as a trustee for UCF and by failing to disclose his relationship with Suntrust Bank.

In making his argument that there was a fiduciary relationship between himself and Mr. Probasco, Mr. Malone relies upon unspecified references to the record set forth in his Statement of Facts asserting that "[g]iven the factual background, as previously outlined in this Brief, it is uncontradicted in this record that Probasco owed Malone a fiduciary duty." As best we can ascertain, the references in the Statement of Facts to which Mr. Malone alludes are those which indicate that Mr. Probasco "liked" Mr. Malone and wanted to see him "make it and make it on his own." Mr. Malone also apparently relies upon references to testimony that he and Mr. Probasco had conversations wherein they had discussed the possibility that Mr. Probasco might be Mr. Malone's biological father, a fact which Mr. Probasco denies. The only specific references to the record made by Mr. Malone in the argument portion of his brief relate to assertions that he signed the Management Agreement and the Letter of Agreement because he was told do so by Mr. Probasco and that certain promises were made to Mr. Malone by Mr. Probasco to induce his signature. Neither of these latter assertions, if true, constitutes evidence that there was a fiduciary relationship between the parties.

T.R.A.P 27(a)(7) provides that the brief of the appellant shall contain "[a]n argument, which may be preceded by a summary of argument, setting forth the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, *with citations to the authorities* and appropriate references to the record (which may be quoted verbatim) relied on." (Emphasis added.)

Mr. Malone has cited no legal authority in support of his argument that there was a fiduciary relationship between himself and Mr. Probasco. As we have noted on prior occasion, the failure to cite authority for propositions argued on appeal constitutes a waiver of the issue. *Rhea County v. Town of Graysville*, an unreported opinion of this Court filed in Knoxville on July 25, 2002, and *State v. Brown*, 795 S.W.2d 689 (Tenn. Crim. App. 1990). Accordingly, this issue is waived.

The next issue we address is whether the Trial Court improperly applied the parol evidence rule to exclude oral evidence related to the interpretation of the May 1990 Management Agreement and the April 1992 Letter of Agreement.

The parties in this case acknowledge that "[a]s a general rule, parol evidence is inadmissible to contradict, vary, or alter a written contract when the written instrument is valid, complete and unambiguous, absent fraud or mistake or any claim or allegations thereof." *Whelchel Company, Inc. v. Ripley Tractor Company,Inc.*, 900 S.W.2d 691 (Tenn. Ct. App. 1995).

With respect to the Management Agreement, Mr. Malone argues that the parol evidence rule should not have been applied to exclude his testimony "that he was induced to sign the Management Agreement by the promises of Probasco that it would not change the parties' partnership relationship, and would not change the eventual disposition of the party[2]." In support of this argument Mr. Malone cites *Whelchel, ibid.,* for the proposition that the parol evidence rule does not exclude oral testimony if the parties have an underlying agreement or collateral contract. Mr. Malone asserts that he and Mr. Probasco "had an underlying or collateral agreement that they would share equally in the profits eventually derived from the subsequent disposition of the properties, after both of them got their investments back." While we did recognize the admissibility of parol evidence as to collateral agreements in *Welchel*, we also noted that "[p]arol proof of 'inducing representations ' or 'collateral agreements' to the written contract must be limited to subject matter which does not *contradict* or *vary terms* which are plainly expressed in the writing." (Emphasis in original.) The Management Agreement specifically provides that no partnership arrangement exists between the parties and any oral evidence that Mr. Malone seeks to introduce to prove that the parties were partners is obviously in direct contradiction with this provision. The Management Agreement also provides that, as compensation for his services as manager, Mr. Malone will receive "Fifty Percent (50%) of the amount of proceeds realized from the ultimate sale or other disposition of the Properties in excess of the total Investment made by Trustee's Principal, or on his behalf, in the Properties." Mr. Malone asserts that his testimony does not contradict the subject matter of the Management Agreement with respect to the matter of "disposition of the properties" and argues that this provision of the Management Agreement has the same practical effect as the alleged partnership agreement. Although Mr. Malone asserts that the parol evidence he seeks to introduce does not contradict the contract "but merely supplements and/or explains" it, he does not state in what manner the Management Agreement will be supplemented or explained by such evidence. Mr. Malone's argument that the Trial Court erred in excluding parol evidence regarding the Management

---

[2] Although Mr. Malone uses the word "party" we do not understand that reference and we will assume that this is an error and that he intended to use the words "partnership property" or "property" instead.

Agreement is without merit. We additionally note as follows as regards this matter. As set forth above, the final judgment appealed from in this case decrees that the claims of partnership based upon alleged oral agreements contradict both the Management Agreement and the Letter of Agreement and are, therefore, barred under the parol evidence rule. The judgment also provides that "the alleged promise made by defendant to induce plaintiff's signature on the April 22, 1992 Letter of Agreement to the effect that plaintiff's claims relative to the targeted area survived that agreement both directly contradict that agreement and are also barred by the application of the parol evidence rule." However, the judgment does not specifically address the matter of whether parol evidence is admissible with respect to Mr. Malone's rights under the Management Agreement regarding disposition of the property in the target area and, accordingly, we question whether, under T.R.A.P. 3, that matter is appropriately raised in this appeal. In any event, as stated, we find Mr. Malone's argument as to this matter to be without merit.

We next address Mr. Malone's argument that the parol evidence rule should not be applied with respect to the Letter of Agreement signed by the parties on April 22, 1992. Mr. Malone presents four grounds for this argument.

First, Mr. Malone asserts that the Letter of Agreement states that it memorializes an oral agreement involving the transfer of real estate which was reached by the parties on December 23, 1991. Mr. Malone asserts that "[u]nder our Statute of Frauds, an oral agreement to convey real estate is not even enforceable and under Probasco's position, he transferred the real estate at issue with nothing more than Malone's alleged consent. Of course, Malone denies that he consented to the transfer." Mr. Malone offers no explanation as to why his assertion that the parties' oral agreement to convey the properties was unenforceable is relevant to the issue of admissibility of parol evidence. He does not cite any authority to support his apparent argument that these assertions relative to the statute of frauds prove that the Trial Court erred in applying the parol evidence rule with respect to the Letter of Agreement. As previously noted, the failure to cite authority for propositions argued on appeal constitutes a waiver of the issue. *Rhea County, ibid.* Furthermore, although Mr. Malone denies that he consented to the transfer of the properties, he does not deny that he signed the Letter of Agreement which acknowledges that did agree to the transfer. Any testimony offered to contradict that acknowledgment is properly excluded under the parol evidence rule.

Second, Mr. Malone asserts that the Letter of Agreement is ambiguous in that it provides that Mr. Probasco "would make certain loans to Malone to assist him in carrying the remaining debt on the property and to assist him in making certain purchases of property on Houston Street." Mr. Malone argues that "[t]he general statement that Probasco 'would make certain loans 'to Malone is very ambiguous and therefore parol evidence, at a minimum, should be admissible to explain and supplement the written document." Even assuming there is ambiguity with respect to the nature of these loans, Mr. Malone fails to show how parol evidence of an alleged partnership between the parties or parol evidence of Mr. Probasco's alleged agreement to pay him fifty percent of the increased value of the subject properties upon their disposition is relevant in explaining such asserted ambiguity.

Mr. Malone's third argument that the parol evidence rule should not apply is based upon his assertion that he alleged both fraud and mistake in this case. In support of this assertion as to allegations of fraud, Mr. Malone directs us to testimony previously referenced in his brief showing that "certain promises" were made to him by Mr. Probasco. Specifically, the record shows that Mr. Malone testified to the effect that Mr. Probasco told him that, if he would go ahead and sign the Letter of Agreement, "he and I were partners and I would be treated right and that I would get 50 percent of the increased value in the donated partnership properties...." In his complaint Mr. Malone states that Mr. Probasco's assurances that Mr. Malone "would always be treated as a 50/50 partner and would always be entitled to his share of the profits of the Malone/Probasco Partnership." The complaint asserts that these assurances constitute fraud in the inducement sufficient to set aside the Letter of Agreement.

In *Oak Ridge Precision Industries, Inc. v. First Tennessee Bank* National *Association,* 835 S.W.2d 25 (Tenn. Ct. App. 1992) we stated as follows at page 29:

> The elements of fraud are an intentional misrepresentation with regard to a material fact; knowledge of the representation's falsity, i.e., it was made "knowingly" or "without belief in its truth" or "recklessly" without regard to its truth or falsity; the plaintiff reasonably relied on the misrepresentation and suffered damages; and the misrepresentation relates to an existing or past fact. *Stacks v. Saunders*, 812 S.W.2d 587, (Tenn. App. 1990). Claims based on promissory fraud must embody a promise of future action without the present intention to carry out the promise. *Id.* at 593.

In light of the above language from *Oak Ridge Precision Industries, Inc.* we construe Mr.Malone's cause of action to be for promissory fraud. We further stated in *Oak Ridge Precision Industries, Inc., ibid.* that promissory fraud "must be established by evidence other than either the failure to keep the promise or the subjective impression of the promisee." See also *Stacks v. Saunders*, 812 S.W.2d 587 (Tenn. Ct. App. 1990). Mr. Malone testifies that he believes that Mr. Probasco intended to keep the promise when he made it in April of 1992.

> Q. ... So my question is, at the time you say he made this promise do you have any reason to believe that he didn't fully intend to keep it?
>
> A No. I don't have no reason to believe he didn't fully intend to keep it. I thought he would have kept his promise to me.
>
> Q You still believe that today? Today as you sit here you would think he intended to keep that promise when he made it?
>
> A Do I think back then - yes, he intended to keep the promise. You did get that I said intended to keep the promise back then? Okay.

Mr. Malone's cause of action for promissory fraud fails based upon his own testimony that when Mr. Probasco made the alleged promise he had the present intention of keeping it.

Mr. Malone also asserts that "issues with respect to mistake are present, since Malone has testified that he did not sign one of the December 30, 1991, Quitclaim Deeds and that the other Quitclaim Deed, if signed, was not signed until April of 1992." Mr. Malone fails to explain how his alleged failure to sign one deed and his alleged signing of the other deed in April of 1992 constitute mistake and he otherwise references no evidence of mistake.

Finally, Mr. Malone argues that the Trial Court's exclusion of parol evidence regarding the Letter of Agreement was erroneous because there was an underlying or collateral agreement between the parties. Mr. Malone's argument in this regard is set forth in his brief as follows:

> Mr. Probasco made inducing representations to Malone which induced Malone to sign the April 1992 Letter of Agreement. The April 1992 Agreement is vague, but it does express that Probasco agrees, in return for Malone's agreement to let Probasco covey away real estate, which Probasco apparently had conveyed away four months prior, to do additional things and make additional loans for Malone in the future. This underlying collateral agreement can certainly be explained by Malone and Haymes' testimony with respect to the future promises made to Malone by Probasco. Therefore, the testimony of Malone and Haymes with respect to the promise made by Probasco does not contradict the subject matter of the contract but does explain and supplement it.

As acknowledged by Mr. Malone in the Management Agreement he signed in May of 1990, his position in the business relationship between himself and Mr. Probasco was that of manager. As previously noted, paragraph four of the Letter of Agreement sets forth the means by which the entire management fees to which he was entitled under the Management Agreement will be computed. The Letter of Agreement does not provide that Mr. Malone will receive a portion of the increased value of the properties conveyed to UCF. Accordingly, parol evidence of Mr. Probasco's alleged promise that Mr. Malone would receive a portion of the increased value of such properties directly contradicts the Letter of Agreement and is, therefore, barred under the parol evidence rule. *Welchel, ibid.*

The next issue presented for our review is whether the Trial Court erred in concluding that Mr. Malone and Mr. Probasco were not partners. In its order granting summary judgment the Trial Court found that the Management Agreement signed by Mr. Malone in May of 1990 indicates that Mr. Malone "was a manager acting for a principal rather than a partner." The Court further found that there is no written partnership agreement and that "the claims of partnership based upon the alleged oral agreements of the parties directly contradict the May __, 1990 Management Agreement ... and are, therefore, barred by the application of the parol evidence rule." Our review of the record

compels us to the conclusion that these findings are well supported and arguments of Mr. Malone to the contrary are without merit.

The final issue presented for our review is whether the Trial Court erred in concluding that Mr. Malone's causes of action were time barred under the statutes of limitations set forth at T.C.A. 28-3-105 and T.C.A. 28-3-109 and under the doctrine of laches.  In light of our conclusions relative to summary judgment, we choose to pretermit the issue relative to statutes of limitations and laches.

For the foregoing reasons we affirm the judgment of the Trial Court and remand for collection of costs below.  Costs of appeal are adjudged against Roy Michael Malone, Sr. and his surety.

_____
HOUSTON M. GODDARD, PRESIDING JUDGE