IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
On-Briefs October 31, 2006

## TRAVIS JONES v. STATE OF TENNESSEE, EX REL. KEVA COLEMAN

A Direct Appeal from the Juvenile Court for Shelby County
No. R-2556     The Honorable George E. Blancett, Special Judge

_____

No. W2006-00540-COA-R3-JV - Filed December 12, 2006

_____

This is an appeal from the ruling of the Juvenile Court of Shelby County overruling the juvenile Referee's finding that Appellant's voluntary acknowledgment of paternity should be set aside under T.C.A. § 24-7-113.  Finding that the evidence preponderates against the trial court's finding concerning fraudulent procurement, we vacate the Order of the trial court and remand for reinstatement of the previous Judgment of the trial court affirming the Referee's Judgment.

**Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Juvenile Court Vacated, Remanded and Rendered**

W. FRANK CRAWFORD, P.J., W.S., delivered the opinion of the court, in which ALAN E. HIGHERS, J. and DAVID R. FARMER, J., joined.

James Sanders of Memphis, Tennessee for Appellant, Travis Jones

Michael E. Moore, Acting Attorney General and Reporter; Lauren S. Lamberth, Assistant Attorney General for Appellee, State of Tennessee ex rel., Keva Coleman

**OPINION**

Travis Jones ("Appellant") and Keva Coleman began dating in 1998.  Sometime in late 1998, they separated.  During the separation, Ms. Coleman had an affair with Darnell King.  About a month later, Ms. Coleman informed Mr. Jones that she was pregnant, and that she believed that Mr. Jones was the father.  Thereafter, Mr. Jones and Ms. Coleman renewed their relationship.

Khiara was born on April 22, 1999.  At the hospital, Mr. Jones was listed as the father on Khiara's birth certificate and allegedly executed a voluntary acknowledgment of paternity ("VAP").  After the child was born, Mr. Jones and Ms. Coleman lived together for about seven months.  Thereafter, Mr. Jones moved out but maintained contact with Khiara by exercising visitation every other weekend.

From January to June of 2001, Mr. Jones was away at military training. Upon return, Mr. Jones tried to visit Khiara but was unable to locate Ms. Coleman. Mr. Jones was then deployed to active duty from March to November 2003. Upon his return, Mr. Jones again sought visitation with Khiara but was unable to locate Ms. Coleman.

In late 2004, Mr. Jones happened to see Ms. Coleman out and, although he did not renew the relationship with Ms. Coleman, Mr. Jones immediately began to visit with Khiara. Sometime around March of 2005, Mr. Jones began to suspect that he was not Khiara's biological father. Consequently, he obtained an independent DNA test. On April 28, 2005, Mr. Jones filed a "Petition to [Dis]Establish Paternity," in the Juvenile Court of Shelby County seeking to disestablish his paternity of Khiara. In his petition, Mr. Jones alleges fraud in the procurement of the VAP. The trial court ordered the parties to submit to DNA testing. The DNA test results excluded Mr. Jones as the biological father. On September 12, 2005, after a hearing before the Referee, the court granted Mr. Jones's petition and disestablished paternity. The State of Tennessee *ex rel*. Keva Coleman ("State,"or "Appellee") timely requested a *de novo* hearing before the Special Judge, which request was granted by Order of September 19, 2005.

At the rehearing, Mr. Jones moved for continuance on the ground that he was unable to adequately prepare because he was allegedly served with notice of the date of the rehearing only the day before. The trial court denied the continuance, noting that Mr. Jones only had to re-prove everything he had proved at the initial hearing. In addition, the court also denied Mr. Jones's request to admit the DNA test results made pursuant to the court order.

By Order of February 9, 2005, the trial court dismissed Mr. Jones's petition without prejudice. Mr. Jones appeals and raises four issues for review as stated in his brief:

> 1. Whether the Rehearing Judge erred in dismissing the trial judge's Findings that fraud had occurred; that Petitioner had been excluded by DNA Test and was, therefore, not the natural father of the child named in the Petition; that there had been minimal contacts between the Petitioner and the minor child in the case at bar; and that the requirements of TCA §68-3-311 had been met?
>
> 2. Whether the Rehearing Judge erred in finding that fraud can not be made out from the fact of a woman's admission in open court to having had a sexual affair at or around the time of conception with a man not a party to the action at bar; later withholding the fact of the sexual affair from the other party to the action, while convincing that other party to execute a voluntary acknowledgment of paternity of the woman's child by stating to the other party that he was in fact said child's father, even though the woman admitted in open Court to not being sure of said child's paternity at the time of the declaration to the other party?

3. Whether the Rehearing Judge's denial of Appellant's reasonable request for a continuance was abuse of discretion, in that Appellant was served with notice of the rehearing and an Answer to the Appellant's Petition the previous day to the hearing?

4. Whether the Rehearing Judge's Order dismissing Appellant's Petition with no specific findings of fact or law was an abuse of discretion in that Rehearing Judge's Order overruled previous specific findings of fact and law?

T.C.A. § 24-7-113 (2000) provides for relief from voluntary acknowledgments of paternity if certain requirements are met, to wit:

(a) A voluntary acknowledgment of paternity which is completed under the provisions of § 68-3-203(g), § 68-3-302, or § 68-3-305(b) or under similar provisions of another state or government shall constitute a legal finding of paternity on the individual named as the father of the child in the acknowledgment, subject to rescission as provided in subsection (c). The acknowledgment, unless rescinded pursuant to subsection (c), shall be conclusive of that father's paternity without further order of the court.

\*                                  \*                                  \*

(c) A signatory to a voluntary acknowledgment shall be permitted to rescind the voluntary acknowledgment at the earlier of:

\*                                  \*                                  \*

(2) Within the sixty-day period following completion of the acknowledgment, at any judicial or administrative proceeding during that period at which the signatory is a party and which proceeding relates to the child, by completion of the form described in subdivision (c)(1) or by the entry of an order by the administrative or judicial tribunal which directs the rescission of such acknowledgment.

\*                                  \*                                  \*

(e)(1) If the voluntary acknowledgment has not been rescinded pursuant to subsection (c), the acknowledgment may only be challenged on the basis of fraud, whether extrinsic or intrinsic, duress, or material mistake of fact.

(2) The challenger must institute the proceeding upon notice to the other signatory and other necessary parties including the Title IV-D agency within five (5) years of the execution of the acknowledgment, and if the court finds based upon the evidence presented at the hearing that there is substantial likelihood that fraud, duress, or a material mistake of fact existed in the execution of the acknowledgment of paternity, then, and only then, the court shall order parentage tests. ***Such action shall not be barred by the five (5) year statute of limitations where fraud in the procurement of the acknowledgment by the mother of the child is alleged and where the requested relief will not affect the interests of the child, the state, or any Title IV-D agency***. Nothing herein shall preclude the challenger from presenting any other form of evidence as a substitute for the parentage tests if it is not possible to conduct such tests.

Emphasis added.

We first note that the VAP is not included in this record. However, neither party contests the validity of this document. Consequently, and for purposes of this appeal only, we will assume that the VAP was executed in accordance with the statutory mandates.

Because this case was tried by the court sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm absent error of law. ***See*** Tenn. R.App. P. 13(d).

Mr. Jones challenges the VAP on the basis of fraud in the procurement. The law on fraud is well established in Tennessee and, in order to state a claim for fraud, the following elements must be established: (1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation['s] falsity-that the representation was made knowingly or without belief in its truth, or recklessly without regard to its truth or falsity; (3) that the plaintiff reasonably relied on the misrepresentation and suffered damage; and (4) that the misrepresentation relates to an existing or past fact, or, if the claim is based on promissory fraud, then the misrepresentation must "embody a promise of future action without the present intention to carry out the promise." ***Shahrdar v. Global Hous., Inc.***, 983 S.W.2d 230, 237 (Tenn.Ct.App.1998) (quoting ***Stacks v. Saunders***, 812 S.W.2d 587, 592 (Tenn.Ct.App.1990)).

In her testimony, Ms. Coleman admits to having a sexual relationship with Darnell King during the month the child was conceived, to wit:

> Q. So when you [Ms. Coleman] broke up with Mr. Jones, you immediately started dating other men?

A. Well, we broke up a few months–a month–like a month, and then I found out I was pregnant, and I called him [Mr. Jones] and told him I was pregnant.

Q. Now, had you had an affair with the–Darnell King?

A. Yes.

Despite the fact that Ms. Coleman had engaged in activities with Mr. King that could have produced a child, she admits that she did not inform Mr. Jones that there was a possibility that he was not Khiara's father, to wit:

Q. Okay. At any time did you let–or volunteer to Mr. Jones that you had had an affair with Darnell King after you two broke up before you told him you were pregnant?

A. No, because we were broke up.

Q. But when you called him [Mr. Jones] and told him that you were pregnant, you didn't tell him that you had had an affair with somebody else [during the time of conception]?

\*                                    \*                                    \*

A. I don't remember exactly what dates and months I dated him [Mr. King], but me and Travis broke up for a month. We had a disagreement, and I slept with Darnell, and I found out I was pregnant. And I–I thought it was Travis' daughter, too, because–well, I thought I was pregnant by him [Mr. Jones]....

Ms. Coleman's testimony supports a finding that she was at least reckless with regard to the truth of the statement to Mr. Jones that he was Khiara's father. From the record, it is clear that, because of her affair with Mr. King near the time of conception, Ms. Coleman had reason to believe that Mr. King was the father of the child. Even with this information, she proceeded to tell Mr. Jones that he was the father. By Ms. Coleman's own statements, Mr. Jones had no knowledge of her affair with Mr. King and had no reason not to rely upon Ms. Coleman's statement, which he did to his detriment. From the record as a whole, we conclude that the evidence preponderates against the trial court's finding concerning fraud in the procurement of the VAP. Based upon the foregoing, we find that Mr. Jones has met his burden to establish the existence of fraud in this case. Consequently, under T.C.A. § 24-7-113(e)(2), the trial court should have allowed DNA testing. Because the Referee had previously ordered DNA testing, it would be redundant to remand this case for the trial court to order another test. In the interest of judicial economy, we hold that the DNA test ordered by the Referee is admitted.

In addition to a showing of fraud, a party seeking relief under T.C.A. § 24-7-113 outside the five year statute of limitations, must also show that the requested relief will not affect the interests of the child, the state, or any Title IV-D agency. In this case, the trial court specifically found that this requirement is met, to wit:

> There has not been a showing to the satisfaction of the Court that it would be adverse to the interest of the child to terminate parentage, nor has it been shown to the satisfaction of the Court that it would be adverse to the Title IV-D Agency to terminate the parental rights.

From our review of the record, we cannot conclude that the evidence preponderates against the trial court's holding on this criterion.

For the foregoing reasons, we vacate the Order of the trial court and remand for reinstatement of the previous Judgment of the court which affirmed disestablishing paternity. Costs of this appeal are assessed to Appellee, State of Tennessee *ex rel.* Keva Jones.

_____
W. FRANK CRAWFORD, PRESIDING JUDGE, W.S.