**Larry E. GRIBBLE, Plaintiff-Appellant,**

**v.**

**James W. BUCKNER, Judge; Robert Goodwin; Craig Snell; Randy Galloway; and Larry W. Carlton, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

Dec. 12, 1986.

Rehearing Denied Feb. 18, 1987.

Application for Permission to Appeal Denied by Supreme Court May 11, 1987.

Larry E. Gribble, pro se.

William M. Billips, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

This is an appeal by plaintiff from the trial court's dismissal of his complaint on the ground that his claim was barred by the three-year statute of limitations set forth in Tenn.Code Ann. § 28–3–105.

This case arose on April 10, 1974, when plaintiff's livestock was seized by defendant Randy Galloway, who was at the time acting in his capacity as a deputy sheriff for Rutherford County, Tennessee. Defendant Galloway seized the cattle at the direction of the defendant James W. Buckner, who was acting in his official capacity as General Sessions Judge for Rutherford County, Tennessee.

Plaintiff learned of the seizure of his cattle on April 11, 1974, when he was served with three misdemeanor warrants and arrested. The warrants charged plaintiff with cruelty to animals and allowing cattle to run at large. The warrants were served by defendant Galloway, whom plaintiff knew was acting as the agent of defendant Robert Goodwin, the Sheriff of Rutherford County, Tennessee.

A few days after the seizure of the cattle and plaintiff's arrest, plaintiff caused his attorney, William Burton, and one Dr. Jackson to go where the cattle were being held to photograph and inspect the cattle. Plaintiff admits that he knew at this time that the livestock had been placed in the custody of the defendant Larry Carlton by the sheriff or the sheriff's agents pursuant to orders of defendant Buckner.

On May 9, 1974, at a preliminary hearing in the Court of General Sessions for Ruth-erford County, plaintiff was bound over to the grand jury on the misdemeanor charges. On May 12, 1975, the District Attorney General made a *nolle prosequi* with respect to the charges and an order was so entered in the Circuit Court for Rutherford County.

Thereafter, plaintiff filed at least three motions seeking the return of his livestock but was unsuccessful each time in having his livestock returned.

In November, 1974, defendant Larry Carlton filed suit against plaintiff in the Rutherford County General Sessions Court, seeking to recover for expenses he had incurred in pasturing plaintiff's livestock. Judgment was rendered for Carlton against plaintiff. Plaintiff appealed to the Circuit Court and filed a counterclaim against Carlton for killing two of his cattle and Carlton's failure to return the remainder of the livestock.

The case was first tried in June, 1975, and ended in a mistrial. In December, 1977, the case was tried a second time and resulted in an award to plaintiff against Carlton for $42,100.

On June 12, 1981, Carlton filed bankruptcy. Plaintiff was never able to collect any amount of his judgment from Carlton. On November 19, 1982, he brought this suit against Carlton, Buckner, Goodwin, Snell and Galloway.

William Burton, a member of the Rutherford County, Tennessee, Bar, represented plaintiff at both the June, 1975, and December, 1977, trials. Mr. Burton testified in this case by deposition that the defendant Larry Carlton filed an answer to plaintiff's crossclaim in the Circuit Court in which Carlton defended on the ground, *inter alia,* that he had received the livestock under the direct orders of defendant Buckner, who was acting in his official capacity as Judge of the Court of General Sessions for Rutherford County, and under the direction and instruction of the sheriff of Rutherford County. He was asked in the deposition as follows:

Q. Let me ask you, Mr. Burton. After receiving that answer, did you consider filing suit against the county

officials or officer of the court, to name them as a party to the lawsuit?

A. Well, Mr. Billips, I will answer that this way. I have to practice law before Judge Buckner. I have to use the services of the Deputy Sheriff and the Sheriff of the County, so I didn't file that lawsuit.

Q. Did you discuss filing it with Mr. Gribble, to your knowledge?

A. I don't know if I did or not.

Q. But this time you knew of their alleged involvement; correct?

A. I knew of their involvement from the very beginning. Judge Buckner ordered them seized. There was no question about that.

Q. You knew that he had ordered them seized, and you knew who had seized them, and you knew who had custody of them?

A. There is no question of that.

Q. In 1974?

A. A few days after they were seized, I knew they were seized at the order of Judge Buckner.

Mr. Burton also admitted that there was some discussion in his law office in regard to the possibility of adding the sheriff's department and Judge Buckner to the lawsuit. He testified in this regard as follows:

Q. Let me put it this way. Apparently around the office, you and whoever you discussed this with back in 75 discussed the possibility of adding the Sheriff's Department, maybe Judge Buckner, in this lawsuit?

A. I'll have to agree it was discussed.

Q. But you didn't?

A. The records are clear on that.

Q. And the reason you didn't was because you still thought his cattle were out there?

A. That's one (1) of the reasons. And I have to practice law before Judge Buckner. And I have to use the deputies to serve papers, and I don't go around suing the local sheriff and the local judge.

Q. Did you recommend that Mr. Gribble go see somebody else that would be willing to file these suits?

A. I don't recall.

Following an evidentiary hearing, the trial court issued its Memorandum and Decree on January 28, 1986, in which it found, *inter alia*, that plaintiff's suit was barred by the "three-year statute of limitations for conversion of personal property." The court also found:

Since there is a substantial question as to whether the Court has erroneously deprived plaintiff Gribble of a jury trial, the Court deems it appropriate to make a part of this Memorandum the conclusion that the evidence on the issues pertaining to the statute of limitations was conclusive to the extent that reasonable minds could not differ. Therefore, the Court would have directed a verdict if there had been a jury.

We discuss plaintiff's first and third issues together. They are: I, "The Trial Court erred in denying plaintiff's timely request for a jury trial," and II, "The decree is inconsistent with the evidence."

Tennessee Rule of Civil Procedure 38.02 provides:

Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed, or by written demand filed with the clerk, with notice to all parties, within fifteen (15) days after the service of the last pleading raising an issue of fact.

Plaintiff filed his original complaint on November 19, 1982. A jury demand was not made at the time the complaint was filed. We have searched the record and have been unable to find a "written demand filed with the clerk...." However, plaintiff argues that he filed an amended complaint in September, 1984, in which he requested "trial by jury." There is in the record a copy of an "Amended Complaint" which shows on its face that it was not filed but was "tendered September 7, 1984." The trial court, regarding the "Amended Complaint," found: "[Plaintiff] moved for

permission to file his amended complaint, which the Court disallowed."

Plaintiff argues that the trial court erred in finding that he sought permission to amend. However, the record fails to disclose anything contrary to the trial court's conclusion that plaintiff sought permission to amend.

When a party seeks leave to amend, he waives the absolute right, granted by Tenn.R.Civ.P. 15, to amend. *See Vars v. International Brotherhood of Boilermakers,* 204 F.Supp. 245 (D.Conn. 1962). Plaintiff did not comply with the rules in demanding a jury and the trial court properly denied a jury trial.

However, even if the plaintiff had complied with the rules and properly demanded a jury and if the trial court was in error in failing to grant him a jury trial, that error was harmless and the judgment should stand. Tenn.R.App.P. 36(b).

The trial court found that reasonable minds could not differ insofar as the evidence concerning the statute of limitations was concerned and that he would have directed a verdict had there been a jury. Following our review of the record, we agree. Reasonable minds could not differ.

In deciding whether or not to direct a verdict,

> the trial judges and the appellate courts take the strongest legitimate view of the evidence in favor of the [opponent of the motion], allow all reasonable inferences in his favor, discard all countervailing evidence and deny the motion where there is any doubt as to the conclusions to be drawn from the whole evidence. A verdict should be directed only where a reasonable mind could draw but one conclusion.

*Crosslin v. Alsup,* 594 S.W.2d 379, 380 (Tenn.1980) (citation omitted).

This is a suit by plaintiff for conversion of his livestock by defendant Carlton. Plaintiff knew on April 11, 1974, that his livestock had been seized by sheriff's deputies pursuant to an order of defendant Buckner.

Not later than April 13, 1974, both plaintiff and his attorney knew that the livestock had been placed into defendant Carlton's possession. Both plaintiff and his attorney have contended from the very beginning that the seizure was illegal.

William Burton, plaintiff's attorney, testified by deposition that he knew of all of these defendants' involvement in the case but did not bring suit against any of the defendants, other than Carlton, because he had to practice law before defendant Buckner and had to use the services of the sheriff.

If, as plaintiff has contended from the very outset, the seizure of his livestock on April 10, 1974, was illegal, the conversion took place on April 10, 1974. He admits that he learned of defendant Galloway's, the sheriff's, and Buckner's involvement on April 11, 1974, when he was served with the misdemeanor warrants. He admits that within a few days thereafter he knew that his livestock had been placed with defendant Carlton.

Tennessee Code Ann. § 28–3–105 provides that a cause of action for "conversion of personal property" must be brought "within three (3) years from the accruing of the cause of action." If, as the plaintiff contends, the seizure was illegal, then he knew not later than a few days after April 10, 1974, who all of the parties involved in the illegal seizure were, and the statute of limitations ran not later than a few days after April 10, 1977.

However, if the seizure was legal, the conversion took place not later than May 12, 1975, when the misdemeanor charges against plaintiff were dismissed. At that time there was no longer any foundation upon which a legal seizure would lie, and thereafter there was a conversion of plaintiff's livestock.

The facts indisputably show that the statute of limitations had run long before the suit was filed on November 19, 1982. The trial judge correctly dismissed plaintiff's suit.

Plaintiff, by his second issue, contends that "[t]he Trial Court erred by denying the plaintiff access to the record."

We find nothing in the record, nor are we cited to any portion of the record, that indicates that plaintiff was denied access to the record. The trial judge did deny plaintiff the right to go through the trial judge's personal file. However, plaintiff has failed to show that he was entitled to search through the trial judge's personal file. We find no error in plaintiff being denied access to the trial judge's personal papers. This issue is without merit.

We find each of the plaintiff's issues to be without merit and affirm the judgment of the trial court. Costs are assessed against the plaintiff and the cause is remanded to the trial court for the collection of costs and any further necessary proceedings.

TODD, P.J., M.S., and CANTRELL, J., concur.