IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 6, 2017 Session

## P. ROBERT PHILP, JR. v. SOUTHEAST ENTERPRISES, LLC, ET AL.

Appeal from the Chancery Court for Wilson County
No. 2012-CV-403    Charles K. Smith, Chancellor

_____

No. M2016-02046-COA-R3-CV

_____

The tenant of office building sued the landlord, a limited liability company, and its two owners for various causes of action arising out of his eviction.  Following a nine-day trial the court held that the tenant had been wrongfully evicted and his property converted, and awarded the tenant nominal damages of $1.00 for the eviction, $23,130.00 for conversion of his personal property located in the building, $5,000.00 in punitive damages, costs of $2,395.00 and pre-judgment interest of $6,224.27.  The tenant appeals the awards of damages and costs, and contends that interest should be 10 percent rather than the 5.5 percent awarded.  The landlord contends that the holding that the tenant was wrongfully evicted should be reversed, that the tenant was not entitled to an award of damages for conversion, and that the individual owners should not be held liable for the damage awards.  Upon a thorough review of the record, we modify the award of damages for conversion of the tenant's property and remand the case for the court to award interest from the date the property was converted; we affirm the decision to award punitive damages, vacate the amount of damages, and remand for the court to make specific findings of fact and conclusions of law relative to the appropriate factors and enter judgment accordingly; in all other respects, the judgment is affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Modified in Part, Vacated in Part and Affirmed in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which FRANK G. CLEMENT, JR., P. J., M. S., and ANDY D. BENNETT, J., joined.

P. Robert Philp, Nashville, Tennessee, Pro Se, appellant.

Dean Robinson, Mt. Juliet, Tennessee, for the appellees, Southeast Enterprises, LLC; Thomas M. Davis, Individually; and Bobby Eastland, Jr., Individually, appellees.

# OPINION

## I. FACTUAL AND PROCEDURAL BACKGROUND

On September 28, 2007, Robert Philp ("Plaintiff") entered into a lease agreement for space in an office building which was under construction in Mount Juliet, Tennessee, for the purpose of developing a professional office-services facility. Southeast Enterprises, LLC, was named in the lease as landlord; Thomas Davis and Bobby Eastland, the owners of Southeast, signed the lease as landlords (collectively "Defendants"). The lease agreement was for an initial five-year term, to begin on the date when all construction was completed; rent was to be $11,038.50 per month. Plaintiff took possession on August 4, 2008, and installed a telecommunications system and decorated the office building with wall art, furniture, kitchen appliances, window blinds, and other office accessories.

Plaintiff paid the rent for August, September, and October 2008; he failed to pay November 2008 rent on the due date and, after meeting with Defendants, received an extension until November 17. When Plaintiff failed to meet the extended date, Defendants' attorney sent Plaintiff a letter stating that he had to pay November and December rent by November 29, or the lease would terminate, and Defendants would demand that he pay the balance owed through the term of the lease. By December 6, 2008, Defendants had not received payment, whereupon they changed the locks on the doors and posted a notice on the building entrance stating that Plaintiff had been evicted.

Plaintiff filed suit in Wilson County Chancery Court on January 5, 2009, seeking recovery of his personal property and damages; that case was non-suited on December 13, 2011. Plaintiff filed the instant suit on December 11, 2012,[1] asserting causes of action including breach of contract, conversion, intentional interference with business relations, fraudulent inducement, wrongful eviction, defamation, and intentional and negligent misrepresentation. Defendants answered and counter-claimed for damages for breach of the lease. Following a multitude of procedural and pre-trial motions, a nine-day, non-jury trial was held in May 2016.

On May 25, 2016, the court made oral findings of fact and conclusions of law, which were incorporated into an order, entered July 5, 2016; following hearings on various post-trial motions, the court entered final judgment on September 13, 2016. The court found in favor of plaintiff on his claims for wrongful eviction, conversion of

---

[1] Between the filing of the first and second suits, Mr. Philp filed for bankruptcy; the record before us does not contain any filings from the bankruptcy court.

personal property, and punitive and exemplary damages; the court awarded Plaintiff a total of $36,750.87 in damages, discretionary costs and prejudgment interest.[2]

Plaintiff appeals, raising ten issues for resolution. With respect to damages, Plaintiff contends that the awards for wrongful eviction and punitive damages were inadequate; that the court did not award the full measure of allowable damages for conversion; and that the court erred in failing to award damages for fraudulent inducement, promissory fraud, intentional or negligent misrepresentation, detrimental reliance, and gross negligence. The remaining issues asserted by Plaintiff are that the court erred in granting Defendant's motion to remove the case from the jury docket; in not ruling on Plaintiff's claims for breach of the implied covenant of good faith and fair dealing, and tortious interference with business relationships; in not awarding him additional costs; in not awarding pre-judgment interest at a rate of 10%; and in using the incorrect starting date for calculating interest.

While not raising specific issues for resolution, Defendants contend that the holdings against Defendants for wrongful eviction and conversion of personal property should be reversed. Defendants additionally argue that, should the court uphold the damages award, the individual defendants, Thomas Davis and Bobby Eastland, Jr., should not be held jointly and severally liable with Southeast Enterprises, LLC.

## II. STANDARD OF REVIEW

Appellate review of non-jury cases is de novo upon the record, accompanied by a presumption of correctness of the trial court's findings unless the evidence preponderates against those findings. *See* Tenn. R. App. P. 13(d). Conclusions of law, however, are reviewed under a pure *de novo* standard, according no deference those made by the lower court. *Jones v. Garrett*, 92 S.W.3d 835, 838 (Tenn. 2002) (citing *The Bank/First Citizens Bank v. Citizens & Assocs.*, 82 S.W.3d 259, 262 (Tenn. 2002)).

---

[2] The damage award was apportioned as follows:

- Wrongful eviction: $1.00
- Conversion of personal property: $23,130.00
- Punitive and exemplary damages: $5,000.00
- Discretionary costs: $2,395.60
- Pre-judgment interest on the full amount of the judgment from December 11, 2012: $6,224.27

Defendants were held jointly and severally liable on the judgment.

## III. ANALYSIS

### A. Jury Trial

Neither the complaint Plaintiff filed in December 2012 nor the amendment to the complaint he filed in July 2013 contained a jury demand. Plaintiff argues on appeal, as he did in the trial court, that a Notice of Jury Demand he filed on November 10, 2015, complied with the applicable rules. We disagree.

We review a trial court's decision to deny a jury trial for an abuse of discretion. *Caudill v. Mrs. Grissom's Salads, Inc.*, 541 S.W.2d 101, 105 (Tenn. 1976). An abuse of discretion occurs if a trial court causes an injustice to a party by "(1) applying an incorrect legal standard, (2) reaching an illogical or unreasonable decision, or (3) basing its decision on a clearly erroneous assessment of the evidence." *Lee Med., Inc. v. Beecher*, 312 S.W.3d 515, 524 (Tenn. 2010). "The abuse of discretion standard of review envisions a less rigorous review of the lower court's decision and a decreased likelihood that the decision will be reversed on appeal." *Id.* (citing *Beard v. Bd. of Prof'l Responsibility*, 288 S.W.3d 838, 860 (Tenn. 2009); *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000)). This standard of review "does not, however, immunize a lower court's decision from any meaningful appellate scrutiny." *Lee Med.*, 312 S.W.3d at 524 (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 211 (Tenn. Ct. App. 2002)).

The right of trial by jury is a constitutional right. Tenn. Const. Art. I, § 6. The right in civil cases is not self-enforcing, rather "[a] party who desires a jury trial must file and serve a timely demand for a jury in accordance with Tenn. R. Civ. P. 38.02."[3]

---

[3] Tennessee Rule of Civil Procedure 38.02 provides:

> Any party may demand a trial by jury of any issue triable of right by jury by demanding the same in any pleading specified in Rule 7.01 or by endorsing the demand upon such pleading when it is filed, or by written demand filed with the clerk, with notice to all parties, within 15 days after the service of the last pleading raising an issue of fact.

Tennessee Rule of Civil Procedure 7.01 reads:

> There shall be a complaint and an answer; and there shall be a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and there shall be a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or to a third-party answer.

The Advisory Commission Comment to Rule 7.01 clarifies that the rule adopts the federal practice of cutting off pleadings after complaints and answers.

4

*Nagarajan v. Terry*, 151 S.W.3d 166, 174 (Tenn. Ct. App. 2003). "Parties who fail to comply with [Rule] 38 have not properly requested a jury trial and will be deemed to have waived their right to a jury trial. *Id.* (citing Tenn. R. Civ. P. 38.05; *Gribble v. Buckner*, 730 S.W.2d 630, 633 (Tenn. Ct. App. 1986).

In his brief, Plaintiff states that "Plaintiff had timely filed the Notice of Jury Demand within 15 days of pleading (his Rule 7.02 Motion) raising a question of fact, as required by Tennessee Rule of Civil Procedure 38.02." Rule 7.02, however, only instructs that "[a]n application to the court for an order shall be by motion. . . ."; it is not a motion per se. In his brief, Plaintiff does not name or cite to a specific motion which he contends complies with either Rule 7.01 or Rule 38.02. In our review of the record, the only motion which was filed within 15 days prior to the Notice of Jury Demand was a motion filed on October 26, 2015, in which Plaintiff sought to enforce an order entered on August 29, 2014, requiring Defendants to return some of Plaintiff's personal property to him, for monetary sanctions, and for civil contempt; Plaintiff did not request or demand a jury in the motion. The motion was heard on November 3, and the court entered an order on November 23 granting the Plaintiff relief; the court reserved the monetary sanctions and civil contempt for trial.[4] Plaintiff filed another motion on November 23 seeking to enforce the ruling of November 3; this motion included the words "Jury Demand" in the caption.

We also note from the record that the case had been set pursuant to Defendants' motion by order entered September 21, 2015. Plaintiff opposed the motion, citing *inter alia*, the anticipated large number of witnesses and suggesting that a two week trial would be appropriate; he made no mention of a jury. As suggested in Plaintiff's response, the court set aside two weeks for trial.

On February 29, 2016, the court entered an order setting a pre-trial conference for the first day of trial "following jury selection and empanelment." Defendants filed their motion to remove the case from the jury docket on April 5; the order granting Defendants' motion was entered April 18. In the order granting the motion the court ruled:

> That Plaintiff had originally made a proper jury demand in his verified complaint in his previous case filed January 5, 2009, and bearing Docket No. 09003, but a Voluntary Dismissal of that case was filed on December 7, 2011, and the Order dismissing the original case was filed on December 13, 2011.

---

[4] It is apparent from the record that the court ruled from the bench on November 3. An order was also entered on this motion on November 30; the only difference between the orders is that the one entered November 23 was prepared by Plaintiff and the one entered on November 30 was prepared by defense counsel.

That Plaintiff failed to demand a jury in the TRCP 7.01 pleadings in the present case, and the only jury demand filed by Plaintiff was a Notice of Jury (12) Demand filed on November 10, 2015.

That on November 23, 2015, Plaintiff filed Motions To Enforce Injunction For Return Of Personal Property, For Monetary Sanctions, And For Civil Contempt in the present case with Jury Demand (12) noted on the motions but those motion are not TRCP 7.01 pleadings, and even if construed as supplemental pleadings, Plaintiff would not be entitled to a jury trial pursuant to the authority of *Hardeman County Bank v. Stallings*, 917 S.W. 2d 695 (1995).

That pursuant to TRCP 38.02 Plaintiff has failed to make a proper demand for a jury trial in this case.

Neither the motion nor the Notice of Jury Demand is a pleading identified in Rule 7.01; consequently, Plaintiff did not satisfy the requirement of Rule 38.02.

Plaintiff also argues that the Defendants have been "on notice" of a jury trial from the jury demand which was included in the complaint in the case filed in 2009. His argument in this regard is unavailing; the 2009 case was voluntarily dismissed. The entry of the order approving Plaintiff's voluntary dismissal meant that "the case [was], for all intents and purposes, over." *Barnett v. Elite Sports Med.,* No. M2010-00619-COA-R3-CV, 2010 WL 5289669, at *2 (Tenn. Ct. App. Dec. 17, 2010). "If the action is refiled, it proceeds as a new action." *Id*. The case currently before the court was filed in 2012 and has proceeded as a new action; Plaintiff did not include a jury demand in the appropriate pleadings in this case. The court did not err in granting Defendant's motion to try the case on the non-jury docket.[5]

### B. Damages

The standard of review we employ for damage awards in non-jury cases was set forth in *Memphis Light, Gas & Water Div. v. Starkey*:

In the appeal of a damages award, the appellate review of "[w]hether the trial court has utilized the proper measure of damages is a question of law that we review *de novo*." *Beaty v. McGraw*, 15 S.W.3d 819, 829 (Tenn. Ct. App. 1988); see also *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). The amount of damages awarded, however, is a question of fact so long as the amount awarded is within the limits set by the law. *Beaty*, 15 S.W.3d at

---

[5]  After the conclusion of the trial, as well as in a Motion for a New Trial, Plaintiff renewed his argument that proper demand for a jury had been made. Our holding that the court did not err in granting Defendants' motion to have the case tried in the non-jury docket renders moot Plaintiff's argument that the trial court erred in denying his Motion for a New Trial on this basis.

829. Thus, in a non-jury case such as this, we review the amount of damages awarded by the trial court with a presumption of correctness, unless the preponderance of the evidence demonstrates otherwise. See Tenn. R. App. P. 13(d); *Beaty*, 15 S.W.3d at 829 (citing *Armstrong v. Hickman County Highway Dep't*, 743 S.W.2d 189, 195 (Tenn. Ct. App. 1987)). Great weight is given to factual findings that are based on the trial court's assessment of witness credibility. *Smith v. Smith*, 93 S.W.3d 871, 875 (Tenn. Ct. App. 2002). This is because the "trial judge as the trier of fact had the opportunity to observe the manner and demeanor of all of the witnesses as they testified from the witness stand." *Whitaker v. Whitaker*, 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997); *McCaleb v. Saturn Corp.*, 910 S.W.2d 412, 415 (Tenn. 1995).

244 S.W.3d 344, 352-53 (Tenn. Ct. App. 2007).

### 1. Award For Wrongful Eviction

Plaintiff argues that the award of $1.00 for wrongful eviction is inadequate because the eviction caused Plaintiff's business to shut down. Defendants contend that the holding that Defendants wrongfully evicted Plaintiff should be reversed because Plaintiff breached the lease agreement by not paying rent. Inasmuch as liability is a prerequisite to an award of damages, we address Defendant's contention first.

In the Findings of Fact and Conclusions of Law, the trial court included the following paragraphs, which are pertinent to this claim:

32. So on December 6, 2008, Defendants posted a notice at the building site stating that Mr. Philp had been evicted, and they changed the locks on the door and locked him out, and stating that any tenants were to communicate with them.
* * *
37. Plaintiff's position is that the method of eviction was illegal and improper and that none of his statutory and constitutional rights of notice or a day in court were provided. Defendants just came in and changed the locks, and Plaintiff thought that was illegal and improper.
* * *
48. The commencement date for the lease was August of 2008. The Court finds that Plaintiff breached the contract by not paying his rent timely for the months of November and December, and the Court finds that Defendants had a right to terminate the lease. However, the Court finds that the method of termination was wrong. The Court finds that it was a wrongful eviction.

7

Defendants do not contest the court's findings; citing rights available to them under paragraph 14 of the lease,[6] they argue that they "elected to meet the dilemma by pursuing a common-sense self-help approach to the serious problem created by Plaintiff's default." Upon our review, paragraph 14 does not allow the action Defendants pursued in this case of bypassing legal process, changing the locks on the door and locking Plaintiff out. We agree with the trial court's holding that Defendants' actions constituted wrongful eviction.

Plaintiff has failed to cite in his brief any evidence or authority to support his claim that the damage award for wrongful eviction was inadequate; the only citations are to the Findings and Conclusions and the Final Judgment.[7] Plaintiff's proof of damages for this claim consisted primarily of the testimony of Mr. Don Cunningham.[8] With respect to the award of $1.00 for damages for wrongful eviction, the court held:

> The Court gives nominal damages of $1 under the tort claim for damages. Plaintiff did not prove any damages for the tort claim of wrongful eviction. The Court did not accept Mr. Cunningham's (Plaintiff's expert's) opinion.

---

[6] Paragraph 14 details the rights of the landlord upon default by tenant, which include the right to terminate the lease and acceleration of all remaining payments, as well as the right to reimbursement of expenses incurred as a result of tenant's failure to perform its obligations, costs of securing another tenant, and costs of altering the property in order to accommodate a new tenant.

[7] In the section of his brief devoted to this issue, Plaintiff argues:

> The wrongful eviction directly caused about two and a half years of fighting off lawsuits and collections, culminating in Plaintiff's no-asset bankruptcy in June 21011. . . . The court awarded nothing for the loss of Plaintiff's business. But for the wrongful eviction and conversion, Plaintiff would have remained in business and likely survived the storm."

As noted above, contrary to the requirements of Tennessee Rule of Appellate Procedure 27(a), there are no citations to testimony, exhibits or other authority supporting this argument.

[8] Mr. Cunningham's testimony is contained in pages 2013-2164 of a 17 volume transcript consisting of over 2,500 pages. Despite the requirements of Tennessee Rule of Appellate Procedure 27(a)(7) and Tennessee Court of Appeals Rule 6, neither Plaintiff nor Defendants have favored this court with a citation to any testimony of Mr. Cunningham to support their respective arguments, where any objection was made to any testimony, or where the court ruled in any manner relative to the testimony of Mr. Cunningham during the course of trial. This court is under no obligation to search the record. *See Eldridge v. Eldridge*, 137 S.W.3d 1, 11 n.3 (Tenn. Ct. App. 2002) (quoting *Schoen v. J.C. Bradford & Co.,* 642 S.W.2d 420, 427 (Tenn. Ct. App. 1982) ("[W]e are "not under a duty to minutely search a voluminous record to verify numerous unsupported allegations.")). We shall assume that neither party challenges Mr. Cunningham's qualifications as an expert witness, or any testimony of Mr. Cunningham cited by, relied upon, or rejected by the court in its ruling.

As the trier of fact, the trial court's assessment of witness credibility is given great weight. *Memphis Light, Gas & Water Div.*, 244 S.W.3d at 353 (Tenn. Ct. App. 2007); *Whitaker v. Whitaker,* 957 S.W.2d 834, 837 (Tenn. Ct. App. 1997) (holding the "trial judge as the trier of fact had the opportunity to observe the manner and demeanor of all of the witnesses as they testified from the witness stand"). The trial court stated it did not accept Plaintiff's expert's opinion. The court also noted Plaintiff's expert testified that the crash of the economy in 2008 was a contributing factor to the failure of Plaintiff's business. Moreover, Plaintiff has failed in his brief to specify the amount and nature of the damages sought for wrongful eviction. We afford the trial court's assessment of Mr. Cunningham's witness credibility great weight and, in the absence of any evidence to the contrary, affirm the award of $1.00 for wrongful eviction.

### 2. Award For Conversion of Personal Property

The trial court awarded $23,130.00 to Plaintiff for Defendants' conversion of his personal property, which Plaintiff contends is inadequate. Although Defendants have not assigned specific error to the holding that they converted Plaintiff's personal property, in our discretion we address the sufficiency of the evidence to support the award. *See* Tennessee Rule of Appellate Procedure 13(b).

Defendants contend that the holding that Defendants converted Plaintiff's personal property should be reversed because an Order entered prior to trial resolved the issue of the return of Plaintiff's personal property. Defendants also contend that they could have pursued their remedy under paragraph 16 of the Lease, which provided that if the tenant attempts to remove personal property from the building without having first paid the landlord all monies due, the landlord has the right to store or dispose of any of the tenant's personal property in the building, but that they "allowed their actions to be controlled by the Court during the proceedings."

In the Findings of Fact and Conclusions of Law, the trial court included the following paragraphs pertinent to its holding that Defendants converted Plaintiff's property:

> 32. So on December 6, 2008, Defendants posted a notice at the building site stating that Mr. Philp had been evicted, and they changed the locks on the door and locked him out, and stating that any tenants were to communicate with them.
> * * *
> 34. By locking Plaintiff out, Defendants maintained possession of all of Plaintiff's property inside the building. While Plaintiff had possession of the property, it was referred to as Providence Business Center; after he was locked out, the building was referred to as Brookside Landing.
> * * *

9

35. Trial Exhibit No. 129 is a list of all of Plaintiff's property that was locked inside the building when they changed the locks and converted his property.

\* \* \*

53. Defendants did commit conversion of Plaintiff's personalty. Trial Exhibit No. 160 was the Plaintiffs testimony as to the value of those items that were not returned and that are still in Defendants' building. Plaintiff sent a letter to Defendants telling them that he had items of property in the building and to secure them. Plaintiffs position is that his damages for conversion are the cost of his investment, rather than present-day value. Defendants have nothing to contradict this.[9]

Defendants do not contest the findings or cite to evidence which they contends preponderates against it; they cite to an order entered on November 30, 2015, and argue that all issues of the return of Plaintiff's personal property were resolved. This argument is without merit. The order was entered on motions filed by Plaintiff to enforce an earlier judgment for the return of personal property, for sanctions, and for civil contempt; the order acknowledges that Plaintiff's property is still in the building and orders that Defendants should return certain items of Plaintiff's personal property. . . ." The order concludes by stating:

3. That the dispute and legal issue of the status of any other personal property that is attached to the building shall be resolved upon the trial of this cause.
4. That the issues of monetary sanctions and civil contempt should be reserved for trial.

There is no indication in the order that it was intended to, or did, address Plaintiff's claim of conversion, and Defendants fail to cite any evidence in support of their argument that the order "finally resolv[ed] all issues related to Plaintiff's pursuit [of the return of his business property]."

In like fashion Defendants' argument they could have pursued remedies under paragraph 16 of the lease but, rather, "allowed their actions to be controlled by the Court during the proceedings" is unavailing. Paragraph 16, entitled "Abandonment," states:

If Tenant removes or attempts to remove personal property from the Property other than in the usual course of occupancy, without having first paid Landlord all monies due, the Property may be considered abandoned, and Landlord shall have the right, without notice, to store or dispose of any

---

[9] The court then listed the specific awards for the various converted items of personal property.

personal property remaining on the Property after the termination of this Lease. Any such personal property shall become Landlord's personal property.

Defendant does not explain the manner by which this paragraph precludes a determination that Plaintiff's property was converted under the circumstances presented in this case, and we fail to discern such, particularly where, as here, the court found that Defendants bypassed legal process and changed the locks on the door.

Conversion has been defined as:

[T]he appropriation of another's property to one's own use and benefit, by the exercise of dominion over the property, in defiance of the owner's right to the property. A cause of action for conversion occurs when the alleged wrongdoer exercises dominion over the funds in *"defiance of the owner's rights."*

*Ralston v. Hobbs*, 306 S.W.3d 213, 221 (Tenn. Ct. App. 2009) (citations omitted; emphasis added in original).

Defendants' actions of wrongfully evicting Plaintiff from the property allowed them to exercise dominion and maintain control over Plaintiff's personal property. Accordingly, we affirm the holding that Defendants converted Plaintiff's property and proceed to address the amount of the award of damages.

The pertinent Findings of Fact and Conclusions of Law regarding damages for conversion were as follows[10]:

45. Plaintiff testified as to the value of the property that Defendants failed to return; however, the Court notes that this exceeded the value placed on the same items in his sworn bankruptcy petition.
* * *
60. The Court is awarding damages for these items because there was a wrongful eviction and conversion of Plaintiffs property. There is nothing to indicate that Mr. Philp was lying and seemed to be supported in terms of the items listed in the bankruptcy petition, which was mostly synonymous with the items listed in Trial Exhibit No. 160 and also listed in Trial Exhibit No. 30, where Plaintiff had to list all of his property. This is some penalty for the improper method of removing a tenant. The Court is not awarding the cost of renewing the bond for the property.

---

[10] Citations to the transcript are omitted.

61. The Court is awarding Plaintiff the total amount of the items listed against Defendants. Conversion is merely the assumption or control of property that is inconsistent with the rights of ownership. Conversion consists of use and enjoyment of personal property of another without the owner's consent. Defendants testified that they did use the blinds and various items of furniture and equipment, etc. Conversion allows for recovery of all injuries sustained as a natural and proximate result of Defendants' wrongdoing. Defendants are relieved of the obligation of returning these items, since they are ordered to pay for them.

62. The Court has awarded Plaintiff full value for the items that were converted and not returned. The Court is sorry Plaintiff lost his watercolor painting that was given on behalf of his father. The Court knows this is emotional to him, but there is nothing the Court can do about that.
* * *
71. The Court is awarding no special or general damages on the tort claims. The Court knows that Plaintiff's father's painting is worth a lot more to Plaintiff than just fair market value but is not awarding any more damages.

Plaintiff contends that the measure of damages for conversion should have been for the full cost of Plaintiff's investment plus moving and storage expenses, loss of use and rental value, and wear and tear, rather than the present day value which served as the basis of the award.

The law applicable to this award was succinctly set forth in *Lance Prods. v. Commerce Union Bank*:

> As a general rule, plaintiff's damages in an action for conversion are measured by the sum necessary to compensate him for all actual losses or injuries sustained as a natural and probable result of the defendant's wrong.
> However, consequential damages must be proved with reasonable certainly.
> The ordinary measure of damages for conversion is the value of the property converted at the time and place of conversion, with interest.
> In special damages are pleaded and proved, plaintiff may recover for all injuries or losses sustained as a proximate result of the conversion, but there can be no recovery for losses or injuries which are too remote or uncertain, or which the plaintiff could have avoided by the exercise of ordinary diligence.
> Where damages, though the natural results of the acts complained of, are not the necessary result of it, they are termed "special damages" which the law does not imply and which must be alleged in order that evidence on the subject may be admissible.

12

> It is generally held that special damages must be particularly averred in the complaint to warrant proof thereof or a recovery therefor.

764 S.W. 2d 207, 213 (Tenn. Ct. App. 1988) (internal citations omitted).

The trial court based the damage award on the present day value of the personal property which Plaintiff claimed was not returned, as reflected in various trial exhibits and materials from Plaintiff's bankruptcy. Plaintiff did not plead special damages for conversion in his complaint and does not contest the items for which an award was made.[11] He fails to set forth a cogent argument in his brief that the court erred and has not identified any evidence which preponderates against the values assigned by the court.[12] These values are reasonable and supported by the evidence; accordingly, we

---

[11] Plaintiff's Verified Complaint included a section titled "FACTUAL ALLEGATIONS," consisting of fifty numbered paragraphs; two of the paragraphs specifically addressed damages:

> 25. Business and personal property belonging to Plaintiff on the premises include, without limitation, the following (with estimated costs):
>
> Window blinds on all Providence Business Center leased premises $ 10,000.00
> All computer, video, stereo, speakers, and all other equipment, wall presentation panel, cabinetry and all other items in the conference room (exclusive of leased plants, table and chairs) $ 15,000.00
> All computer, printing and copying equipment and applies $ 3,500.00
> All furniture, storage cabinets, chairs, tables, etc. $ 12,500.00
> All art work $ 25,000.00
> All door stops, waste baskets, items in drawers, office and kitchen supplies $ 1,500.00
> All telecommunications equipment and materials $ 25,000.00
> All kitchen equipment including but not limited to refrigerators, microwaves, coffee makers, water filters, and all other appliances, equipment, dishes, glasses, vases, supplies, paper products, etc. $ 8,500.00
> All items in the storage and telecommunications closet, exclusive of items leased by third parties $ 5,000.00
> Indoor and exterior Providence Business Center signage $ 2,000.00
>
> TOTAL ESTIMATED VALUE: $ 112,000.00
>
> 26. As a result of Defendants' actions and the significant amount of monies invested, Plaintiff has suffered extensive damages and was left in financial ruin.

Pertinent to this issue, the prayer for relief in the complaint requests:

> 3. Compensatory damages in an amount to be determined at trial.
> 4. Consequential damages in an amount to be determined at trial.

[12] Two portions of Plaintiff's argument in his brief relative to this issue are illustrative. One portion of the brief, addressing damages for the various causes of action, the entire argument with specific respect to conversion states:

13

affirm the trial court's award of $23,130.00 in damages for Defendants' conversion of Plaintiff's personal property. Consistent with the instruction of *Lance Productions*, it is necessary to modify the judgment and remand the case for the trial court to make an award of interest on the award.[13]

### 3. Punitive Damages

Plaintiff contends that the court "erred in awarding only $5,000.00 in punitive damages against Defendants with collective net assets over $3 million" and that the award is "insufficient to punish Defendants and deter future misconduct."

In its ruling from the bench on May 25, 2016, the court awarded punitive damages of $5,000.00 based on its holdings that Defendants wrongfully evicted Plaintiff and converted his personal property; this ruling was memorialized as part of the Findings of Fact and Conclusions of Law entered on July 5, 2016.[14] Plaintiff moved the court to amend or make additional findings and amend the judgment or for a new trial in which he generally complained of what he asserted was the inadequacy of the money judgment. In the motion, with specific respect to punitive damages, Plaintiff stated:

> At trial Plaintiff asked for an award of $1 million to punish these Defendants. That would be more appropriate, considering the purpose of

---

> **B. The Court found conversion but awarded only partial damages**.
>
> The court awarded the value of Plaintiffs' investment for some property and awarded estimated present market value (after eight years of conversion) for other property. The court awarded no tort damages for conversion, which is a tort.

Similarly, another portion of the brief, ostensibly addressing the damage award for conversion, headed "The trial court erred in failing to award the full value of Plaintiff's investment in his personal property which Defendants converted in December 2008." The section is entirely argumentative and cites primarily to the court's oral ruling on May 25, 2016, or to the Findings and Conclusions memorializing that ruling. The one citation to an exhibit in the record is to a list of property that Defendants were ordered to return to Plaintiff which was attached to an order entered on August 9, 2013; the list of property, however, has no monetary value assigned to any of the property.

[13] The $6,224.27 interest awarded by the court was pre-judgment interest from the date of filing of the Amended Complaint; consistent with *Lance Productions*, interest on the award for conversion should run from December 6, 2008, the date of conversion.

[14] The pertinent portion of the Findings and Conclusions stated:

> 49. The Court finds punitive damages against the Defendant LLC in the amount of $5,000 for wrongful eviction and conversion of property. Plaintiff requested punitive damages, and a person should by punished, to say the least, for illegal, wrongful activity. The Court's opinion is that this was illegal, wrongful activity.

punitive damages, to punish and to deter future wrongdoing, so that Defendants get the message. $5,000 is not sufficient. The Court should conduct a hearing to take evidence on the net assets of each Defendants [sic], so as to properly assess punitive damages as they were intended.

Pursuant to Plaintiff's motion, the court held a hearing on punitive damages for July 29.

At the hearing, Plaintiff examined each individual Defendant relative to the assets held by and net worth of each, and the facts and circumstances of his eviction from the premises. Plaintiff then testified, largely relative to the factors that the court is to consider when setting an amount of punitive damages, as set forth in *Hodges v. S.C. Toof & Co.*[15] On August 18, the court entered an order stating in pertinent part:

> 1. The Court's punitive damages award of $5,000 made on May 25, 2016 on the final day of non-jury trial is unchanged and is confirmed.
> 2. The award is based on specific findings set forth in the Finding of Fact and Conclusions of Law entered on July 5, 2016, that Defendants and each of them had the specific intent to evict Plaintiff and to recklessly convert his personal property, which the Court found to be in violation of law. Those factual findings of intentional and reckless misconduct by each of the Defendants, proving by clear and convincing evidence, warrant the

---

[15] The factors are:

(1) The defendant's financial affairs, financial condition, and net worth;
(2) The nature and reprehensibility of defendant's wrongdoing, for example
    (A) The impact of defendant's conduct on the plaintiff, or
    (B) The relationship of defendant to plaintiff;
(3) The defendant's awareness of the amount of harm being caused and defendant's motivation in causing the harm;
(4) The duration of defendant's misconduct and whether defendant attempted to conceal the conduct;
(5) The expense plaintiff has borne in the attempt to recover the losses;
(6) Whether defendant profited from the activity, and if defendant did profit, whether the punitive award should be in excess of the profit in order to deter similar future behavior;
(7) Whether, and the extent to which, defendant has been subjected to previous punitive damage awards based upon the same wrongful act;
(8) Whether, once the misconduct became known to defendant, defendant took remedial action or attempted to make amends by offering a prompt and fair settlement for actual harm caused; and
(9) Any other circumstances shown by the evidence that bear on determining the proper amount of the punitive award.

833 S.W.2d 896, 901-02 (Tenn. 1992). The purpose of punitive damages is to deter misconduct. *Id.*

imposition of punitive damages and are confirmed after hearing on July 29, 2016.

      3. The award is imposed jointly and severally against the Defendants, and each of them. Each Defendant is responsible for paying the award.

In non-jury trials, the trial judge's findings of fact and conclusions of law are essential and must clearly set forth the reasons for approving a punitive damage award, demonstrating a consideration of all of the *Hodges* factors. *Culbreath v. First Tenn. Bank Nat. Ass'n*, 44 S.W.3d 518, 528 (Tenn. 2001). The findings of fact and conclusions of law should explicitly refer to each of the factors*,* as well as any other factors supporting the award of punitive damages. *Id.* at 529. "In the absence of sufficient findings of fact and conclusions of law as to each of the relevant *Hodges* criteria, an appellate court cannot adequately review the trial court's award of punitive damages." *Id.* at 528.

The trial court concluded that clear and convincing evidence demonstrated that the Defendants intentionally evicted Plaintiff and recklessly converted his personal property; the court stated in its Findings of Fact and Conclusions of Law that the "Defendants had a wanton disregard for the fact that Plaintiff would suffer serious harm as a result of the wrongful eviction and conversion." These support the imposition of punitive damages, and we affirm the award. However, neither the Findings of Fact and Conclusions of Law nor the Order on Plaintiff's motion to amend the judgment contain sufficient findings as to each of the relevant *Hodges* criteria in the court's determination of the amount of the punitive damages award. "In the absence of sufficient findings of fact and conclusions of law as to each of the relevant *Hodges* criteria, an appellate court cannot adequately review the trial court's award of punitive damages." *Id.* at 528.[16]

Accordingly, we vacate the $5,000.00 awarded as punitive damages and remand this case to the trial court to make specific findings of fact and conclusions of law relative to the *Hodges* factors and enter judgment accordingly. Nothing in the judgment

---

[16] Moreover, under the record in this case, our review of the punitive damage award is limited due to the absence of credibility findings as to the parties, as the court made in the case of Mr. Cunningham. As noted in *In re Estate of Oakley*:

> As our courts have repeatedly acknowledged, when a trial court has seen and heard witnesses, especially where issues of credibility and weight of oral testimony are involved, considerable deference must be accorded to either *as to the trial court's factual findings. See Seals v. England/Corsair Upholstery Mfg. Co., Inc.,* 984 S.W.2d 912, 915 (Tenn. 1999). However, that deference disappears when the trial court fails to make specific factual findings as to the material facts.

No. M2014-00341-COA-R3-CV, 2015 WL 572747, at *12 (Tenn. Ct. App. Feb. 10, 2015) (emphasis in original).

16

accompanying this Opinion shall require or prohibit the court from reconsidering the amount of the award.

## C. Plaintiff's Claims for Fraudulent Inducement,[17] Promissory Fraud,[18] Intentional[19] or Negligent Misrepresentation,[20] and Detrimental Reliance[21]

---

[17] To be successful on a fraudulent inducement claim, the plaintiff has the burden of proving that the defendant "(1) made a false statement concerning a fact material to the transaction (2) with knowledge of the statement's falsity or utter disregard for its truth (3) with the intent of inducing reliance on the statement, (4) the statement was reasonably relied upon, and (5) an injury resulted from this reliance." *Baugh v. Novak*, 340 S.W.3d 372, 388 (Tenn. 2011).

[18] The elements of fraud are "(1) an intentional misrepresentation with regard to a material fact; (2) knowledge of the representation['s] falsity, [i.e.,] it was made "knowingly" or "without belief in its truth" or "recklessly" without regard to its truth or falsity; (3) the plaintiff reasonably relied on the misrepresentation and suffered damages; (4) and the misrepresentation relates to an existing or past fact." *Stacks v. Saunders*, 812 S.W.2d 587, 592 (Tenn. Ct. App. 1990) (internal citations omitted). Claims based on promissory fraud, however must "embody a promise of future action without the present intention to carry out the promise." *Id.* (quoting *Keith v. Murfreesboro Livestock Market, Inc.* 780 S.W.2d 751, 754 (Tenn. Ct. Ap. 1989).

[19] Our Supreme Court has held:

> To recover for intentional misrepresentation, a plaintiff must prove: (1) that the defendant made a representation of a present or past fact; (2) that the representation was false when it was made; (3) that the representation involved a material fact; (4) that the defendant either knew that the representation was false or did not believe it to be true or that the defendant made the representation recklessly without knowing whether it was true or false; (5) that the plaintiff did not know that the representation was false when made and was justified in relying on the truth of the representation; and (6) that the plaintiff sustained damages as a result of the representation. *Walker v. Sunrise Pontiac–GMC Truck, Inc.,* 249 S.W.3d at 311 (quoting *Metropolitan Gov't of Nashville & Davidson Cnty. v. McKinney,* 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992)); *see also* 8 Tennessee Practice: Tennessee Pattern Jury Instructions—Civil § 8.36, at 357 (11th ed.2011).

*Hodge v. Craig*, 382 S.W.3d 325, 343 (Tenn. 2012).

[20] Liability for negligent misrepresentation results when (1) the defendant is acting in the course of his business, profession, or employment, or in a transaction in which he has a pecuniary (as opposed to gratuitous) interest; (2) the defendant supplies faulty information meant to guide others in their business transaction; (3) the defendant fails to exercise reasonable care in obtaining or communicating the information; and (4) the plaintiff justifiably relies upon the information. *John Martin Co., Inc. v. Morse/Diesel, Inc.,* 819 S.W.2d 428, 431 (Tenn. 1991).

[21] Detrimental reliance, more commonly known as promissory estoppel, involves the defendant making a promise upon which the plaintiff reasonably relied, and the plaintiff showing that the reliance detrimentally affected the plaintiff. *EnGenius Ent., Inc. v. Herenton*, 971 S.W.2d 12, 20 (Tenn. Ct. App. 1997).

Plaintiff argues that substantial evidence was presented to the trial court to sustain his claims of fraudulent inducement, promissory fraud, and intentional or negligent misrepresentation by the Defendants. As all of these causes of action involve either intent to defraud or the falsity of a statement, we discuss the claims together.

Pertinent to these claims, the Findings of Fact and Conclusions of Law state:

19. The Court does not find in listening to the testimony and reading the emails that Defendants were intending to mislead or fraudulently inducing Plaintiff to do anything. Plaintiff had the right to revoke the contract any time he wanted to, according to Section 2 of the commercial lease agreement and get his payment back.
* * *
20. The Court believes that Plaintiff wanted completion of construction to be as soon as possible. He was financially restricted. The Court believes that Plaintiff got into the project with not enough money to weather the storm. The real problem here was the economic crash in September 2008.
* * *
21. The Court believes that Defendants were trying to please Plaintiff and tell him "we'll try to get you in by January 7th and we'll try - we'll do our best.- Defendants were working with subcontractors, etc. The Court believes that Defendants were attempting to fulfill the dream and wishes of Plaintiff, but the Court does not find that Defendants ever intentionally tried to mislead him.
* * *
25. Plaintiff did a great deal of marketing regarding specific opening dates in January, February, March, June, and July 2008, all of which were deferred for various reasons, and some of which had to do with the plans not being approved by him until November 2007, and then not being approved by the City of Mount Juliet until later, and not having a building permit until February 2008. There was no proof as to whose fault this was, and the Court believes that everyone was trying to get these things done as fast as possible.
* * *
47. And Plaintiff is a lawyer, who has dealt with and understands contract law. Defendants were not learned in the area of law. Had Plaintiff wanted the term of the lease to begin on January 7, 2008, he should have had it placed in the lease agreement, that January 7, 2008 is when the lease begins. He didn't do this. He chose not to.
* * *
52. The Court finds no proof of violation by Defendants of the Consumer Protection Act for unfair practices. Plaintiff has failed to prove either

intentional or negligent misrepresentation, causing Plaintiff detrimental reliance, and that claim is dismissed as to all Defendants.

Plaintiff's entire argument on this issue is the following:

> **B. The court failed to consider the preponderance of evidence establishing fraudulent inducement, promissory fraud, and intentional or negligent misrepresentation**
>
> The trial court denied Plaintiff's motion to alter or amend to find intentional or negligent misrepresentation of material facts, false promises, or fraud by Defendants.
> Plaintiff submitted substantial evidence to establish claims for fraudulent inducement, promissory fraud, promises without intent to perform, and intentional or negligent misrepresentation.
> [citations omitted][22]

This argument wholly fails to comply with Rule 27 of the Tennessee Rules of Appellate Procedure; Plaintiff has not cited to any evidence preponderating against the trial court's findings.

The lease agreement entered into on September 28, 2007, provided as the commencement date the "date when all construction is complete." While the target dates for the completion of construction were pushed back from the initial date of January 7, 2008, to August 1, 2008, the commencement date for the term of the lease remained the same. In addition, when Plaintiff initially suggested the January 7, 2008 target date, Defendant Davis replied in an email by stating that, while January 7, 2008, was the target, "we cannot guarantee this date." There is no evidence that the Defendants possessed the requisite intent to commit fraud, nor does it suggest that there was a false statement; the Defendants clearly stated that they could not guarantee the Plaintiff's initial suggestion of a January 7, 2008, opening date. We affirm the holdings that Defendants did not fraudulently induce, commit promissory fraud, or intentionally or negligently misrepresent facts to the Plaintiff.

> **D. Gross Negligence, Breach of Implied Covenant of Good Faith and Fair Dealing, and Tortious Interference With Business Relationships**

In ruling on Plaintiff's claim of gross negligence, the court stated:

---

[22] The citations are to Plaintiff's trial brief and exhibits filed therewith and to the Order on the motion to alter or amend.

19

The Court did consider the evidence of grossly negligent installation of the telecommunications infrastructure which was required by the contract but did not find it applicable, since there was a breach of the contract for failure to pay rent and termination of the contract. The Court did not consider that evidence to be a cause of Plaintiff's failure to pay rent and failure to find tenants.

Plaintiff's entire argument for this issue states:

> If Defendants committed "grossly negligent installation of telecommunications infrastructure which was required by the contract", as the trial court found, then the court should have awarded damages for gross negligence and breach of contract. Instead, the court awarded no damages for this debacle.
> [citations omitted][23]

In the Findings and Conclusions, the court reiterated that it had dismissed Plaintiff's claims against the individual Defendants for breach of implied covenant of good faith and fair dealing and tortious interference with business relationships at the close of Plaintiff's proof, holding that "any liability that might be incurred would be only against Southeast Enterprises, LLC." The court did not specifically address these claims as to Southeast Enterprises otherwise in the Findings and Conclusions; in the final judgment, however, after granting Plaintiff judgment on the wrongful eviction, conversion of personal property, and punitive damages claims, the court stated that "[a]ll other claims for damages are denied."

Plaintiff's entire argument on this issue states:

> **3. The court erred by failing to rule on Plaintiff's claims for breach of the implied covenant of good faith and fair dealing and tortious interference with business relationships.**
>
> Plaintiff prosecuted claims in his Verified Complaint filed December 2012 for torts and breach of contract. The court ruled that there was no breach of contract, despite finding evidence of grossly negligent telecommunications infrastructure, which was a breach of the contract to provide those elements per Plaintiff's specifications.
> Plaintiff's claims for breach of he implied covenant of good faith and fair dealing was not addressed in the Findings of Fact and Conclusions of Law, and neither was Plaintiff's claim for tortious interference with

---

[23] Again, the only citations are to portions of the Findings of Fact and Conclusions of Law.

20

business relationships. Plaintiff presented substantial evidence at trial to support recovery of damages for bother claims.[24]

Plaintiff's argument as to these claims wholly fails to comply with Rule 27(a)(6) of Tennessee Rule of Appellate Procedure and Rule 6(b) of the Rules of the Court of Appeals. Failure to make appropriate references to the record and to cite relevant authority in the argument section of the brief constitutes a waiver of the issue. *See Blair v. Badenhope*, 940 S.W.2d 575, 576-77 (Tenn. Ct. App. 1996); *Rampy v. IGI Acrylics, Inc.*, 898 S.W.2d 196, 210 (Tenn. Ct. App. 1994). This argument is waived.

### E. Award of Costs

Plaintiff moved for an award of discretionary costs of $29,846.26; the court initially awarded him $6,844.76 and, after hearing Defendants' motion to alter or amend, reduced the award to $2,395.60. Plaintiff contends that he should have been awarded the entire amount of his request.

Plaintiff's entire argument on this issue states:

**9. The court erred in failing to award the discretionary costs submitted by Plaintiff.**

**A. Plaintiff presented evidence of $29,846.26 in reasonable and necessary discretionary litigation costs; the court awarded only $2,395.**

The Tennessee Supreme Court has held that reasonable and necessary costs in the preparation and trial of a case may in the court's discretion be assessed in favor of the prevailing party. *Lock v. National Union Fire Insurance Co.*, 809 S.E.2d 483 (Tenn. 1991).
An award of discretionary costs is generally reviewed under an abuse of discretion standard. See Tenn. Code Ann. Section 20-12-119(a)-(b); *Owens v. Owens*, 241 S.W. 3d 478, 496-497 (Tenn. Ct. App. 2007).[25]

For the reasons stated and the authority cited in the immediately preceding section of this opinion, we consider this issue waived.

### F. Interest on the Judgment

The court awarded interest on the judgment at the rate of 5.5 percent from

---

[24] Again, the only citations are to portions of the Findings of Fact and Conclusions of Law.

[25] The only citations are to Plaintiff's motion for the award and declaration in support.

21

December 11, 2012, the date of filing of the Verified Complaint[26]; Plaintiff contends that the rate should be 10 percent in accordance with Tennessee Code Annotated section 47-14-123[27] and that the date of commencement for the prejudgment interest should be the date of filing of the initial case in 2009.

The standard of review of prejudgment interest awards was succinctly set forth in *Myint v. Allstate Ins. Co.*:

> An award of prejudgment interest is within the sound discretion of the trial court and the decision will not be disturbed by an appellate court unless the record reveals a manifest and palpable abuse of discretion. This standard of review clearly vests the trial court with considerable deference in the prejudgment interest decision. Generally stated, the abuse of discretion standard does not authorize an appellate court to merely substitute its judgment for that of the trial court. Thus, in cases where the evidence supports the trial court's decision, no abuse of discretion is found.

970 S.W.2d 920, 927 (Tenn. 1998) (internal citations omitted).

In his brief, Plaintiff fails to articulate a cogent argument upon which to conclude that the court abused its discretion in setting the rate at 5.5 percent. As noted earlier in this opinion, Plaintiff's voluntary dismissal of the original action filed in 2009 ended that case, and present case filed in 2012 proceeded as a new action.

We affirm the award of prejudgment interest at 5.5 percent, to accrue from December 11, 2012.

## G. Liability of the Individual Defendants

The individual Defendants contend that "the Chancellor should be reversed on his finding that the individual Defendants should be equally liable." Their brief on this issue is not a model of clarity; they argue that their counsel moved orally at trial to dismiss

---

[26] In the Findings and Conclusions, which were prepared by Plaintiff and adopted by the court, this was erroneously referred to as the Amended Complaint.

[27] Tennessee Code Annotated section 47-14-123, applicable to commercial instruments and transactions, provides in pertinent part:

> Prejudgment interest, i.e., interest as an element of, or in the nature of, damages, as permitted by the statutory and common laws of the state as of April 1, 1979, may be awarded by courts or juries in accordance with the principles of equity at any rate not in excess of a maximum effective rate of ten percent (10%) per annum….

them from the case pursuant to Tennessee Code Annotated section 48-249-114,[28] and the court granted the motion as to certain allegations of the complaint; that the question of their individual liability came up again at the hearing two days later when the court orally announced its findings and conclusions;[29] and that, since the court ruled on their motion to dismiss prior to Plaintiff raising the fact that Defendants had not pled section 48-249-114 as an affirmative defense, it was "totally unnecessary for counsel [for Defendants] to raise the statute in the motion." Defendants base much of their argument on the premise that the court's oral announcement of findings and conclusions on May 25 prevented the court from considering the matter further; we do not agree with this premise.

Tennessee Rule of Civil Procedure 41.02 provides that "[i]f the court grants the motion for involuntary dismissal, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." Contrary to their premise, neither the oral statement the court made at the May 23 hearing nor the recitation of findings of fact at the May 25 hearing satisfied Rule 41.02. "It is well-settled that a trial court speaks through its written orders—not through oral statements contained in the transcripts—and that the appellate court reviews the trial court's written order." *Williams v. City of Burns*, 465 S.W.3d 96, 119 (Tenn. 2015). Consequently, we proceed to address the merits of their argument.

On June 22 the court entered the following order:

On May 25, 2016, the final day of trial in the above-captioned case, the Court ordered the parties to brief within ten (10) days the following

---

[28] Tennessee Code Annotated section 48-249-114 states in pertinent part:

(a) Limited liability rule.
(1) Except as provided in subsections (d) and (f):
    (A) The debts, obligations and liabilities of an LLC, whether arising in contract, tort or otherwise, are solely the debts, obligations and liabilities of the LLC;
    (B) A member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts, debts, liabilities or obligations of the LLC; and
    (C) A member, holder, director, manager, officer, employee or other agent of an LLC does not have any personal obligation, and is not otherwise personally liable, for the acts or omissions of any other member, holder, manager, officer, director, employee or other agent of the LLC.
(2) Notwithstanding subdivisions (a)(1)(B) and (C), a member, holder of financial rights, director, manager, officer, employee or other agent may be personally liable by reason of such person's own acts or omissions.

[29] These were transcribed and filed with the clerk on July 5.

23

issue: whether Defendants have waived any right to assert Tenn. Code Ann. Section 48-249-114 (regarding personal liability of LLC members) as grounds for an oral motion for directed verdict, because they never pleaded it as an affirmative defense. The Court stated it was withholding judgment until ruling on this issue. Having read and considered the post-trial briefs of the parties on this issue, and having heard and considered oral argument of counsel on May 25, 2016, and good cause appearing, the Court hereby orders as follows:

> Defendants Thomas M. Davis and Bobby Eastland, Jr., have waived any right to assert Tenn. Code Ann. Section 48-249-114 and Tenn. Code Ann. Section 48-217-101, regarding personal liability of LLC Members, because they failed to plead it as an affirmative defense. Therefore, Defendants Thomas M. Davis and Bobby Eastland, Jr., are personally liable for judgment rendered against Defendant Southeast Enterprises, LLC.

Other than the argument previously addressed, Defendants do not argue that the ruling that they were individually liable was in error. Both Tennessee Code Annotated sections 48-249-114 and 48-217-101[30] provide limited liability to members, managers and agents of a limited liability company. As such, the statutes are affirmative defenses that must be pled in accordance with Tennessee Rule of Civil Procedure 8.03. *See* Black's Law Dictionary (10th ed. 2014) (defining "affirmative defense" as "[a] defendant's assertion of facts and arguments that, if true, will defeat the plaintiff's or prosecution's claim, even if all the allegations in the complaint are true.").

---

[30] Tennessee Code Annotated section 48-217-101 states in pertinent part:

(a) Limited Liability Rule.
(1) Except as provided in subsections (e) and (f), a member, holder of financial interest, governor, manager, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts, debts, liabilities, or obligations of the LLC whether such arise in contract, tort or otherwise.
(2) A member, holder of financial interest, governor, manager, employee or other agent of an LLC does not have any personal obligation and is not otherwise personally liable for the acts or omissions of any other member, manager, governor, employee or other agent of the LLC.
(3) Notwithstanding subdivisions (a)(1) and (2), a member, holder of financial interest, governor, manager, employee or other agent may become personally liable in contract, tort or otherwise by reason of such person's own acts or conduct.

## IV. CONCLUSION

For the foregoing reasons, we modify the award of $23,130.00 in damages for Defendants' conversion of Plaintiff's personal property and remand the case for the trial court to make an award of interest on the award since December 6, 2008, through the date of judgment; we affirm the decision to award punitive damages, vacate the $5,000.00 awarded and remand the case for the trial court to make specific findings of fact and conclusions of law relative to the *Hodges* factors and to enter judgment accordingly; in all other respects, the judgment is affirmed.

_____
RICHARD H. DINKINS, JUDGE